The **CITY OF INGLEWOOD** and **Robert H. Collins** on Behalf of Themselves, Citizens, Residents, and Owners of Property Within the City of Inglewood, and Those Similarly Situated, Appellants,

v.

**CITY OF LOS ANGELES**, Appellee.

No. 26081.

United States Court of Appeals, Ninth Circuit.

Nov. 12, 1971.

Rehearing Denied Jan. 18, 1972.

Michael M. Berger (argued), of Fadem & Kanner, Los Angeles, Cal., Donald E. Olson, City Atty., Inglewood, Cal., for appellants.

Milton M. Sherman, Asst. City Atty. (argued), Roger Arnebergh, City Atty., James H. Pearson, Deputy City Atty., Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY and WRIGHT, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal brought by plaintiffs following an order of the District Court for the Central District of California dismissing the plaintiff's complaint without leave to amend. The suit was filed by the City of Inglewood and Robert Collins on behalf of themselves, citizens, residents, and owners of property within the City of Inglewood and those similarly situated [hereinafter referred to as Inglewood]. The plaintiffs allege that the defendant City of Los Angeles, through its ownership and operation of the Los Angeles International Airport, is causing the plaintiffs various forms of personal injuries and property damage.

I. *Pleadings*

Inglewood's original one count complaint was filed on April 21, 1969, seeking damages, declaratory relief and injunctive relief. Inglewood filed a motion for a preliminary injunction. Before filing an answer, Los Angeles moved to dismiss the complaint. The district court granted Los Angeles' motion, dismissing the complaint with leave to amend for failure to comply with Rule 10(b) of the Federal Rules of Civil Procedure (Separate Statements of Claims). A First Amended Complaint in six counts was filed on June 28, 1969. It was dismissed by the district court with leave to amend on the grounds that " * * * plaintiffs have failed to state a substantial federal question within the jurisdiction of the Court and for failure

to show that plaintiffs have standing for relief." [C.T., 298]

A Second Amended Complaint, consisting of six counts, followed on September 29, 1969. [C.T., 300] This complaint was dismissed on January 9, 1970. [C.T., 367] The first count alleging that the operation of the airport was causing injuries to persons and property, was dismissed with leave to amend for failure to state a single claim within the jurisdictional limits of 28 U.S.C. sec. 1331(a). Count Two which alleged violations of 49 U.S.C. sec. 1108(d) (3) [subsequently amended to 49 U.S.C. sec. 1716(c) (3)] and 49 U.S.C. sec. 1110(4) [subsequently amended to 49 U.S.C. sec. 1718(4)], was dismissed without leave to amend on the grounds that plaintiffs could not enforce grant agreements made between Los Angeles and the Federal Aviation Administration. Count Three (alleging violations of zoning laws); Count Four (alleging that the airport constitutes an abatable nuisance); and Count Six (alleging negligency in the operation of the airport) were all dismissed without leave to amend for the reason that they were state claims in nature. Count Five, which alleged that various modifications in the operation of the airport would diminish much of the damage suffered by the plaintiffs, was dismissed with leave to amend for failure to state any substantial federal question.

A Third Amended Complaint was filed on February 9, 1970, and contained only Counts One and Five. [C.T., 374] This complaint was dismissed *without leave to amend* on the grounds that the court believed it " * * * unlikely that any plaintiff will recover the amount of $10,000.00 or greater, and consequently there is a failure to satisfy requisite monetary jurisdiction." [C.T., 521, 524] This appeal followed.

Inglewood attempted to base the jurisdiction of the district court on a variety of grounds.[1] The jurisdiction of this

1. "This action arises under the Constitution of the United States, 5th and 14th Amendments, 49 U.S.C. sec. 1431; 28 U.S.C. sec. 1331; 28 U.S.C. sec. 1343;

Court arises under 28 U.S.C. sec. 1291. In the district court, Inglewood also sought a variety of relief.[2]

## II. *Procedure.*

Before turning to the merits of the claims presented by the plaintiffs, the Court is required to discuss a procedural matter not raised by either party, either in the district court or on appeal. It was for this reason that this Court requested simultaneous post-argument briefs, which have now been filed.

This suit is being maintained under Rule 23 of the Federal Rules of Civil Procedure as a class action. Section (c)(1) of that rule provides that "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." We find no indication that such a determination was made by the district court, though the suit was before the court for over a year. In a difficult and complex case such as this one, it might have been appropriate for the district court to have resolved this matter before the case had reached the appeal stage.

However, we recognize that the requirement such determination is to be made "as soon as practicable" leaves much room for discretion. "[It] will obviously vary from case to case." Frankel, Some Preliminary Observations Concerning Civil Rule 23 (D.C. 1968) 43 F.R.D. 39, 41–42.

" * * * whatever uncertainties exist as to the precise status of an action brought as a class action, during the interim between filing and the 23(c)(1) determination by the court, *it must be assumed to be a class action for purposes of dismissal* or compromise under 23(e) unless and until a contrary determination is made under 23(c)(1)." [Emphasis added]

Philadelphia Electric Co. v. Anaconda American Brass Co., (E.D. Pa., 1967) 42 F.R.D. 324, 326.[3]

■ We hold therefore, it was proper for the district court to assume the suit was a class action in order to determine if it had jurisdiction, without first making the finding required by 23(c)(1); and that this court must likewise assume this was a class action until a contrary determination is made.

---

28 U.S.C. sec. 2201; 49 U.S.C. sec. 1108; 49 U.S.C. sec. 1110, and the facts set forth herein." [C.T., p. 1]

2. "Plaintiffs pray for: 1. A declaration of their rights under 49 U.S.C. sec. 1431. 2. A declaration of their rights under grant-agreements between Los Angeles and the FAA in the light of the requirements of 49 U.S.C. sec. 1108(d)(3) and 1110(4) [sec. 1716(c)(3) and 1718(4)]. 3. Damages assessed by a jury for personal injuries and annoyance. 4. An injunction which orders Los Angeles to: a. Limit use of the existing north runway (24L) to take-offs. b. Prohibit construction of the second north runway (24R) until just compensation is paid to those who will be damaged thereby. [The construction of this runway has since been completed and it is presently in full use. Appellant's Opening Brief, p. 9] c. Limit use of both north runways to daytime hours. d. Extend existing south runways (25R and 25L) and landing thresholds westward to the sea so jet aircraft can land further west thereby flying at greater altitudes over Inglewood. e. Increase landing glide slope from three degrees to four degrees thereby allowing jet aircraft to fly at greater altitudes over Inglewood. f. Use a system of preferential runways to minimize damage to its neighbors. g. Create a monitoring system that reasonable regulations to minimize damage to Airport neighbors can be enforced. h. Prohibit use of both north runways until they may be legally operated. 5. In the event the Court holds that plaintiffs are not entitled to an injunction, an adjudication by a jury of the just compensation for taking and/or damaging of plaintiffs' property, by reason of the Airport operations complained of. 6. Costs of suit. 7. Such other or further relief as the Court deems just." Second Amended Complaint, C.T., pp. 313–314.

3. Strictly speaking, this language may be *dictum. Philadelphia Electric Co., supra,* was an anti-trust case involving proposed settlements, compromise payments, and dismissals of certain defendants only— not a dismissal or compromise of the entire action.

It will hereafter appear we have determined a portion of this case must be remanded to the district court. Upon remand it should be one of the district court's first tasks to make the determination required by Rule 23 with all deliberate speed, if the proceeding reach the stage where such determination is required.[4]

III. *Jurisdictional Amount in Dispute*

Turning to the issues raised by the parties on this appeal, we find that the primary source of dispute is whether or not Inglewood has satisfied the jurisdictional amount requirements of 28 U.S.C. sec. 1331(a).[5] The existence of a substantial federal question under the due process clause of the Fourteenth Amendment for any claim of loss of real property value is not disputed on this appeal. The question is well settled by the case law. Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962); Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148 (1932); Lowe v. Manhattan Beach City School District, 222 F.2d 258 (9th Cir. 1955).

In determining whether or not the plaintiffs have met their burden of satisfying the jurisdictional amount requirements, it is important to note some of the unchallenged conclusions reached by the district court. First, the district court decided that this class action is "spurious" in nature (the claims of each class member being separate from the claims of the rest of the class);[6] that the claims of the class members cannot be aggregated to establish the $10,000 amount in controversy standard;[7] and that the 1966 amendment to Rule 23 did not alter this requirement.[8] [C.T., p. 370]

"Proper practice requires that where each of several plaintiffs is bound to establish the jurisdictional amount with respect to his own claim, the suit should be dismissed as to those who fail to show that the requisite amount is involved." Clark v. Paul Gray, Inc., 306 U.S. at 590, 59 S.Ct. at 749. This rule holds true even though one or more members of a class can establish for themselves the jurisdictional requirements. Clark v. Paul Gray, Inc., *supra;* Alvarez v. Pan American Life Insurance Company, 375 F.2d 992, 997 (5th Cir. 1967).

■ We find that in this case, we have a situation in which some plaintiffs probably can meet the jurisdictional requirements, and some probably cannot. The district court found that " * * * it is *highly unlikely* that *any* plaintiff will recover the amount of $10,000 or greater." [C.T., p. 524] (Emphasis added.) We believe that the district court erroneously applied the law in making that determination.

■■ "It must appear to *a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal. * * * But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from

---

4. If Inglewood attempts to base its claim that the suit should be maintained as a class action on Rule 23(b) (3), the district court should note the fact that some 2,350 members of the class are already involved in suits against the same defendant. C.T., p. 163. See Rule 23(b) (3) (B).

5. "Federal question; amount in controversy; costs (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. sec. 1331.

6. See Alfonso v. Hillsborough County Aviation Authority, 308 F.2d 724 (5th Cir. 1962).

7. Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916).

8. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Zahn v. Int'l Paper Co. (U.S.C.D.Vt.) 53 F.R.D. 430.

the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." [Footnotes omitted and emphasis added.] St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). In the face of plaintiff's allegations,[9] we cannot say to a legal certainty that no plaintiff can state a claim with reasonable certainty entitling him to recover over $10,000. We do not agree that plaintiffs can aggregate damages for claimed personal injuries and damages for loss in value of their property on the theory of inverse condemnation in considering whether the particular plaintiffs have shown the necessary jurisdictional amount in the cause of action for taking of their property. The court should confine its consideration to diminution in value of the particular plaintiff's real property and not include any claim for personal injuries to the same plaintiff. See City of Boulder v. Snyder, 10 Cir., 1968, 396 F.2d 853, 856.

However, we also disagree with Inglewood's conclusionary allegation that "reasonably, for each plaintiff, the value of the sum of [their] injuries exceeds $10,000.00" [C.T., p. 376]. We must consider that Inglewood is attempting to include in the membership of this class action (a) persons who own property in Inglewood without living within the city, and (b) all persons living in the city, no matter how far removed from the airport, or how recently they moved into the city. Therefore, we find that to a legal certainty the amount in controversy for some plaintiffs is not more than $10,000.

■ In making the determination as to whether or not a district court has jurisdiction over the subject matter (the principal issue presented by the parties), the judge is given broad discretion as to when the issue should be resolved.[10] We find little precedent to aid the trial court. When faced with a class action where the pleadings satisfy the jurisdictional amount requirements for some indeterminate number of class members, and do not satisfy them for the rest of the members, it seems to us the better practice not to dismiss the entire action at the pleading stage. See Town of East Haven v. Eastern Airlines, Inc., 282 F.Supp. 507, 516 (D.Conn.1968)

9. "a. 79% of the City of Inglewood (Inglewood) is subjected to exposure to noise levels of 80 PNdb or more by aircraft operating from Los Angeles International Airport (Airport). * * *

"e. Residential uses are not compatible with noise intensities of 70 PNdb or greater. 59% of Inglewood is subjected to noise intensities of 90 PNdb or greater by aircraft operating from Airport.

"f. Property owners subjected to noise intensity in excess of 90 PNdb suffer more than $10,000.00 damages to the value of their real property as it has been rendered unfit for human habitation.

"g. Property owners subjected to noise intensities between 80 PNdb and 90 PNdb have their properties diminished in value approximately 25%.

"h. Some parcels subject to noise intensities between 80 PNdb and 90 PNdb will suffer more than $10,000.00 damage.

"i. Most residential property owners are also residents of Inglewood. Therefore, the amount of their damage is the sum of their personal injuries and property damage." Third Amended Complaint, C.T., pp. 374–376.

We agree with Los Angeles's assertion that these decibel figures do not prove money damages, as the amount of damage will vary with the type of property affected. Appellee's Brief, p. 17. However, such allegations suffice for purposes of establishing jurisdictional amounts until the court requests some more specific evidence of the damage suffered, such as affidavits from real estate appraisers.

10. Fed.Rules Civ.Proc. 12(d) "Preliminary Hearings. The defenses specifically enumerated (1)–(7) in subdivision (b) of this rule [including a motion for lack of jurisdiction over the subject matter], whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial."

Rather, the court should decide for the individual plaintiffs which can recover and which cannot. Once these matters are resolved, the court can begin seeking a more substantial showing from the plaintiffs as to the type of proof they will be able to present. Whenever appropriate, the court can dismiss the complaints as to those parties who are clearly shown to be unable to meet the requirements of jurisdictional amount.

## IV. *Alleged Loss of Tax Base*

There is one cause of action as to which we do affirm the dismissal of the complaint. The City of Inglewood includes in its federal jurisdictional statement a claim against Los Angeles for damages it has allegedly suffered from the loss to its tax base and publicly owned property.[11] "Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the government powers as may be entrusted to them. * * * The state, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. * * * In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, *unrestrained by any provision of the Constitution of the United States.*" [Emphasis added.] Hunter v. City of Pittsburgh, 207 U.S.
161, 178–179, 28 S.Ct. 40, 46, 52 L.Ed. 151 (1907).

 Following this rule, we hold that claims for money damages by one municipal corporation against another municipal corporation of the same state, whether based upon an inverse condemnation theory, upon negligence or nuisance theories, or upon violations of zoning laws, do not arise under the Constitution of the United States. See City of Boston v. Massachusetts Port Authority, 320 F.Supp. 1317 (D.Mass. 1971). The City of Inglewood may have a good claim against Los Angeles for these losses, but it does not have a federal cause of action. This holding does not affect the City of Inglewood's right to gain appropriate enforcement of 49 U.S.C. sections 1716(c) (3) and 1718(4) (discussed below), or its ability to pursue such claims in the state courts.

## V. *Inglewood's Standing to Sue, (Count II) Exhaustion of Remedies.*

There is a further issue for this Court to resolve—whether or not Inglewood has standing to enforce the Federal Aviation Administration grant agreements with Los Angeles under the provisions of 49 U.S.C.A. sections 1716(c) (3) [12] and 1718(4).[13] The district court found that sec. 1718(4) [then sec. 1110(4)] was only intended to deal with the safety of the airplanes on takeoff or landing; that the plaintiffs were not the intended beneficiaries of the grant agreements; and that the statutes imposed no duty on the defendant City of Los Ange-

---

11. "j. Moreover, both Inglewood's property owners and residents are damaged when Inglewood is damaged. Inglewood suffers millions of dollars in damages as its tax base is reduced, its public improvements for land uses incompatible with jet aircraft noise are rendered valueless and its other property becomes diminished in value." *Third Amended Complaint*, C.T. p. 376.

12. "No airport development project may be approved by the Secretary unless he is satisfied that fair consideration has been given to the interest of communities in

or near which the project may be located."

13. "As a condition precedent to his approval of an airport development project under this subchapter, the Secretary shall receive assurances in writing, satisfactory to him, that—
 "(4) appropriate action, including the adoption of zoning laws, has been or will be taken, to the extent reasonable, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft;"

les to give "fair consideration" to neighboring residents. [C.T., pp. 372–373] Both parties on appeal have treated the question as being whether or not the plaintiffs have standing to sue under the grant agreements.

■ We turn first to the question of the purpose of sections 1716(c) (3) and 1718(4). The legislative history is silent regarding the intention of Congress in enacting sec. 1716(c) (3). However, the legislative history of sec. 1718(4) [sec. 1110(4)] supports the theory that flight safety was not the sole purpose of the section.[14] Rapp v. Eastern Air Lines, Inc., 264 F.Supp. 673 (E.D.Pa. 1967) cited by the district court and the appellee only deals with sec. 1718(3) [then sec. 1110(3)]. We conclude, contrary to the District Court, from the language of sec. 1716(c) (3) and the legislative history of sec. 1718(4) that each were intended by the Congress to insure that the welfare of persons living close by airports which were to receive government funds to engage in development projects would receive "fair consideration" by the Secretary of Transportation.

The problem then becomes whether or not Inglewood has standing to sue for enforcement of the grant agreements. We feel that the companion cases of Association of Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) are persuasive, even though not controlling. As the first of those cases pointed out, " * * * the question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to 'cases' and 'controversies'." 397 U.S. at 151, 90 S.Ct. at 829. In Barlow, the

Court set out a three-pronged test for standing. First, do the plaintiffs "have the personal stake and interest that impart the concrete adverseness required by Article III"? 397 U.S. at 164, 90 S. Ct. at 836. Second, are the plaintiffs within the zone of interests to be protected or regulated by the statute? 397 U.S. at 164, 90 S.Ct. 832. Third, is judicial review precluded by statute? 397 U.S. at 165, 90 S.Ct. 832.

The personal stake of the plaintiffs in this case is clear. We have already concluded that the statutes involved were designed to protect the interest of the plaintiffs. While nothing in the statutory language or legislative history provided for judicial review, there is nothing contained therein to preclude it. "There is no presumption against judicial review and in favor of administrative absolutism * * *, unless that purpose is fairly discernible in the statutory scheme." [Citations omitted.] Association of Data Processing Service 397 U.S. at 157, 90 S.Ct. at 831.

This Court does not overlook that major differences exist between Association of Data Processing and Barlow and this case. In those cases, the plaintiffs were suing agency administrators to challenge some affirmative acts taken by them. However, the fact that Inglewood is not suing the Secretary of Transportation but the City of Los Angeles directly does not detract from the holdings in Association of Data Processing and Barlow on the question of standing to sue.

Los Angeles attempts to find support for its position in a series of cases holding that third parties cannot sue on grant agreements between airports and the Federal Aviation Administration based upon third-party beneficiary con-

---

14. "The committee does recognize, however, that airport sponsors are public agencies with a voice in the affairs of the community in which the airport development is undertaken and should be required to use such influence as they might have in a reasonable manner to assure proper zoning of land near the airport, to assure that schools are not built in the flight path of aircraft taking off or landing at the airport, and to discourage the development of residential housing (including apartments) in areas *where noise levels would make such development unwise.*" [Emphasis added.] 1964 U.S.Code Cong. and Admin.News, p. 2069.

tract doctrines. Port of New York Authority v. Eastern Air Lines, Inc., 259 F.Supp. 745 (E.D. N.Y. 1966); City and County of San Francisco v. Western Air Lines, Inc., 204 Cal.App.2d 105, 22 Cal. Rptr. 216 (1962). We note that in both cases that the plaintiffs were airline companies and the provisions of the Federal Airport Act they were attempting to enforce were not the provisions plaintiffs are attempting to enforce in this case.

While we express no opinion as to the merits of those cases, we do not find them controlling in this case. If Los Angeles made the assurances required by sec. 1716(c) (3) and sec. 1718(4) in applying for various grant agreements, then Inglewood must certainly be included within the category of intended beneficiaries of those assurances. Congress had some purpose in enacting these two sections of Title 49. It is not to Los Angeles' benefit to be required to give the Secretary those assurances; nor are the assurances of any independent benefit to the Secretary. The Secretary merely receives them for the benefit of, and in the place of, the surrounding communities and residents of the area. Any other interpretation of sec. 1716(c) (3) and sec. 1718(4) deprives them of any meaning or effect.

This Court must conclude, however, that an unresolved question concerning plaintiffs' ability to sue directly on the grant agreements remains. The District Court perceived the problem as being that the Secretary of Transportation, and not the defendant, was the party who should be sued. [C.T., p. 373] We see the question as being one of exhaustion of administrative remedies. Should Inglewood be required to make an attempt to have the Secretary of Transportation enforce the grant agreements before a court should intervene? The plaintiffs cite the petition of Jordan A. Dreifus, FAA Regulatory Docket No. 9071 (July 10, 1969) as evidence of the fact that such an attempt would be futile. However, we find on page three of that order that " * * * the FAA has,

in fact, implemented Order 7110.13 * * * with respect to the Santa Monica Airport, in cooperation with the City of Santa Monica." This is evidence that there may be profit in turning to the Secretary before attempting to sue the alleged malefactor in the courts.

We hold, therefore, that this is another matter which should be first presented in the district court, especially in light of the fact that in 1970 Congress passed the Airport and Airway Development and Revenue Acts of 1970, P.L. 91–258. Among other changes, this Act substituted the Secretary of Transportation for the Administrator of the Federal Aviation Administration as the person to whom the various assurances are to be made. We leave the task (of determining what effect this change or any other changes brought about by the new Act may have on the issue of exhaustion of administrative remedies) to the district court.

In light of the disposition we are making in this case, we should note that no attempt was made by Inglewood to base the jurisdiction of the district court under 49 U.S.C. sec. 1716(c) (3) and sec. 1718(4), on 28 U.S.C. sec. 1337. We do not express any opinion whether, on remand, an attempt to do so would be successful. See Aircraft Owners & Pilots Ass'n v. Port Authority of N. Y., 305 F.Supp. 93, 103 (E.D. N.Y. 1969).

In accordance with the foregoing opinion: (1) we affirm the dismissal of Count I as to the City of Inglewood, only; (2) we affirm the dismissals of Counts III, IV and VI of the Second Amended Complaint, as to all plaintiffs, upon the ground they involve matters subject to state court jurisdiction, which the federal courts are not required to hear; (3) we reverse the dismissal of Count II of the Second Amended Complaint, and Count V of the Third Amended Complaint, as to all plaintiffs, and remand for further consideration; (4) we reverse the dismissal of Count I of the Third Amended Complaint as to all plaintiffs except City of Inglewood,

and remand to permit the remaining plaintiffs to attempt to plead the necessary individual amounts required to establish federal jurisdiction under 28 U. S.C. § 1331.