523 F.2d 1073
 PAN AMERICAN WORLD AIRWAYS, INC., Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent;
Cathy Ann GILES, et al., Real Parties in Interest.
McDONNELL DOUGLAS CORPORATION, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent;
Geraldine L. FLANAGAN et al., Real Parties in Interest.
UNITED STATES of America, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent;
Geraldine L. FLANAGAN et al., Real Parties in Interest.
 Nos. 74-1726, 74-2093, 74-2240.
 United States Court of Appeals,
Ninth Circuit.
 May 23, 1975.
 
 William G. Tucker, Robert Forgnone, Los Angeles, Cal., and John K. Villa, Civ. Div., Dept. of Justice, Washington, D. C. (argued), for petitioners.
 Daniel C. Cathcart, James G. Butler, Los Angeles, Cal., and Marshall Morgan (argued), for respondents.
 OPINION
 Before HUFSTEDLER and WALLACE, Circuit Judges, and SCHNACKE,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 These petitions for writs of mandamus or prohibition consolidated in this case, arise from two lawsuits, each involving a separate airline crash. Nos. 74-2093 and 74-2240 are petitions respectively by the McDonnell Douglas Corporation (McDonnell Douglas) and by the United States in a case arising out of the crash of a jet airliner near Paris, France, on March 3, 1974. The airliner was manufactured by McDonnell Douglas, and operated by Turkish Airlines, not a party to the action below. The United States was implicated in the crash through the alleged failure of the Federal Aviation Administration properly to certify and inspect the aircraft involved in the crash. No. 74-1726 is a petition by Pan American World Airways, Inc. (Pan American) and The Boeing Company (Boeing) in a case arising out of the crash of a jet airliner at Pago Pago, American Samoa, on January 30, 1974. The airliner was operated by Pan American and manufactured by Boeing.
 
 
 2
 All three petitions for writs of mandamus or prohibition seek to prevent the district court from notifying potential plaintiffs of the actions before it. We grant the petitions.
 
 I. The Petitions in the Paris Action
 
 3
 Between 346 and 360 persons died in the Paris crash. Only 23 were residents of the United States. At least ten actions arising from the crash have been filed in various federal district courts and, by order of the Panel on Multidistrict Litigation, these actions have all been consolidated in the Central District of California. At least one of these has been filed as a class action. Flanagan v. McDonnell Douglas Corp., CV No. 74-808-PH.
 
 
 4
 In the course of pretrial hearings in the Flanagan case, the district judge informed McDonnell Douglas that he intended to order production of a list of passengers and of the names and addresses of their next of kin. He further stated that he would use the list to notify potential plaintiffs of the actions pending before him. The following day, McDonnell Douglas moved that the district judge not seek a passenger list from any source and that he refrain from sending notice to nonlitigants. Both motions were denied. When certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) was denied, McDonnell Douglas filed the petition for mandamus in No. 74-2093. The petition seeks to prevent the district judge from notifying potential plaintiffs that actions arising from the crash are pending before him. The United States, a codefendant, subsequently filed a petition seeking identical relief in No. 74-2240. We have stayed all proceedings in the district court connected with notice to potential plaintiffs pending disposition of these petitions.
 
 A. Preliminary Questions
 
 5
 Before we reach the merits of the petitions, we must discuss three preliminary questions. The first is whether the district court's order may be subjected to interlocutory review by means of a petition for mandamus. Several plaintiffs in actions arising out of the Paris crash (real parties in interest, hereinafter referred to as respondents) have opposed the petition claiming that this order does not involve the exceptional circumstances required for issuance of mandamus. We disagree. Mandamus is an appropriate remedy for actions in excess of the district court's power. Will v. United States, 389 U.S. 90, 95-96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). While the distinction between error subject to adequate review on appeal and "usurpation of power" sufficient for mandamus may not always be clear, Cf. Will, supra, 389 U.S. at 95-96, 88 S.Ct. 269, the order in this case falls within the latter category. Notice from the court to potential plaintiffs not authorized explicitly by statute or rule is so extraordinary that review of such actions by mandamus will not frustrate the congressional policy permitting appeals only from final judgments. See Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382-83, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Furthermore, erroneous notice to potential plaintiffs cannot be remedied on appeal after final judgment. Petitioners cannot be relieved of the burden of actions filed in response to such notice. See id. at 382, 384, 385, 74 S.Ct. 145; De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). Finally, as will appear, the disputed order is erroneous not because the district court improperly resolved an issue properly before it but because it acted without authority sanctioned by statute, rule or the equitable powers of a federal court. See Will,supra, 389 U.S. at 95-96, 88 S.Ct. 269.
 
 
 6
 The second preliminary question concerns the extent of the issues raised by the district court's action. Respondents contend that the order does not raise an issue of the propriety of notice from the court to potential litigants. They argue that the district court itself has ordered neither production of a list of potential plaintiffs nor notification of them. We find this argument unpersuasive. The district court's intention to issue notice to potential plaintiffs is implicit in its denial of the motions of McDonnell Douglas requesting the district court not to seek a list of potential plaintiffs and not to send notice to them.[1] This threat of imminent action is sufficient to warrant extraordinary relief.
 
 
 7
 The third preliminary question concerns the effect of the district court's subsequent certification of a class action upon the petitions for mandamus now before us. Respondents contend that the certification moots the petitions because notice may now be issued as a matter of course to members of the plaintiff class. However, McDonnell Douglas and the United States have also filed petitions for mandamus to vacate the district court's certification of a class action. Since we grant these petitions in McDonnell Douglas v. United States District Court, --- F.2d --- (9th Cir. 1975), the certification has been deprived of whatever mooting effect it may have had.
 
 B. The Merits of the Case
 
 8
 With the preliminary questions answered, the critical issue becomes whether the district court erred in deciding to send notice to potential plaintiffs. Petitioners argue that such notice violates the constitutional restriction of the federal judicial power to cases and controversies or, in the alternative, that it constitutes an abuse of discretion. In reply, respondents contend (1) that the case or controversy requirement is satisfied by the claims already before the district court; (2) that several sources of judicial authority permit the district court to issue notice to potential plaintiffs; and (3) that such notice is required by the due process clause of the Fifth Amendment. Since we reject respondents' last two arguments, we need not reach the question whether the notice contemplated by the district court is in excess of its constitutional power.[2] Instead, we hold that such notice is neither required by the due process clause nor permitted by any ascertainable source of judicial authority.
 
 
 9
 Respondents' due process argument is that potential plaintiffs are constitutionally entitled to notice of pending actions in which they may join. Respondents cite no case reaching this conclusion, and understandably so. So long as the persons sought to be notified do not become parties to these actions, they will not be bound by the outcome. Hence they will not be adversely affected by these actions and need not be notified of them. As stated in Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972):
 
 
 10
 The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.
 
 
 11
 The requirements of the Fifth Amendment are the same. Arnett v. Kennedy, 416 U.S. 134, 151-52, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (plurality opinion); Id. at 164-67, 94 S.Ct. 1633 (Powell, J., concurring and concurring in the result). When no interest is threatened, no notice is required.
 
 
 12
 Respondents' alternative argument is that the district court possesses discretion to issue the notice. They find several sources for such discretion: the equitable powers of the court; sections 0.21 and 1.10 of the Manual for Complex Litigation; and Federal Rules of Civil Procedure 1, 16, 19, 21, 23, 42 and 83.[3] Although most of these purported sources are plainly insufficient, a few require more extended treatment.
 
 1. Equitable Power
 
 13
 Respondents rely upon Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), and Sprogis v. United Air Lines, Inc.,444 F.2d 1194, 1201-02 (7th Cir.), Cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971), for the equitable power of a federal court to issue notice to potential plaintiffs. These cases are distinguishable. To the extent that Sprague permits notice to potential plaintiffs, it does so only because it held that the district court could assess attorney's fees against them for benefits already received. 307 U.S. at 166-67, 59 S.Ct. 777. Sprogis permitted the district court to retain jurisdiction to consider granting relief to persons with claims under the Civil Rights Act of 1964 similar to those of the named plaintiff but relied on policies embodied in the Act. 444 F.2d at 1201-02. Sending notice to prospective plaintiffs cannot be grounded in the general equitable powers of the district court.
 
 2. The Manual for Complex Litigation
 
 14
 The Manual for Complex Litigation does not help respondents. Neither section 0.21 nor section 1.10 of the Manual concern notice, let alone notice to nonlitigants. But in any case, the Manual cannot serve as a source of judicial power because the committee that drafted it possessed authority only to issue recommendations. See Manual for Complex Litigation xiii-xiv (1973).
 
 3. Rules 16, 19 and 83
 
 15
 Federal Rules of Civil Procedure 16, 19 and 83 likewise do not furnish the district court with authority to issue notice to potential plaintiffs. Rule 16 empowers the district court to conduct pretrial conferences concerning a broad range of subjects relevant to pending litigation but does not authorize such notice, at least absent stipulation by the parties. Rule 19 provides for joinder of necessary parties. The district court did not purport to order joinder of the persons sought to be notified, but even if it had, we fail to see how, in their absence, "complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1). Rule 83 authorizes the various district courts to promulgate rules of court but notification from the court to potential plaintiffs is not authorized by any rule of the District Court for the Central District of California and a procedure that deviates so sharply from the traditional role of the judiciary cannot be justified as an ad hoc rule of practice. Compare Republic Int'l Corp. v. Amco Engineers, Inc., 516 F.2d 161, 166 (9th Cir. 1975). See note 3, supra. Finally, respondents argue that the preceding rules should be interpreted to authorize notice to potential plaintiffs because Rule 1 requires that the Federal Rules be construed "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Rule 1, however, concerns only construction of the rules. It does not allow the leap respondents would have us make to create, in effect, new rules far beyond the express language of the rules themselves.
 
 
 16
 Respondents' arguments from the provisions of Rules 21, 23 and 42, again as supplemented by Rule 1, are more forceful.
 
 4. Rule 23
 
 17
 The district court did not find, and the respondents have not shown, that the action below meets the specific prerequisites of a class action. Fed.R.Civ.P. 23(a), (b). Respondents contend nevertheless that it falls within the notice provisions of Rule 23 because a case may be treated as a class action before it is found to be one. See City of Inglewood v. City of Los Angeles, 451 F.2d 948, 951 (9th Cir. 1971); Schy v. Susquehanna Corp., 419 F.2d 1112, 1116 (7th Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970) (dictum); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 42 F.R.D. 324, 326-28 (E.D.Pa.1967); 3B J. Moore, Federal Practice P 23.50 (1974). However, none of the cited cases supports the notice sought in this case.[4] In addition, although an Advisory Committee Note approves of discretionary notice to potential class members prior to the district court's determination whether the action should proceed as a class action, the notice proposed here serves no such limited purpose. See Fed.R.Civ.P. 23(d)(2); 3B J. Moore, supra, P 23.01(11.-1), (12.-2) (1974), quoting Fed.R.Civ.P. 23, Advisory Committee Note (1966); Schy v. Susquehanna Corp., supra, 419 F.2d at 1116. Nor does the proposed notice provide only for notice of compromise or dismissal. See Fed.R.Civ.P. 23(e); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., supra, 42 F.R.D. at 326-28. The admitted purpose of the notice in this case is to bring the claims of unnamed members of the plaintiff class before the court. Notice for this purpose usually has been thought to issue only after certification of a class action. American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 547-49, 552, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (dictum); Cherner v. Transitron Electronic Corp., 201 F.Supp. 934, 935-37 (D.Mass.1962) (Wyzanski, J.); Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 40-41 (1968). Otherwise, by notice and joinder of unnamed members of a possible plaintiff class, a district court could circumvent Rule 23 by creating a mass of joined claims that resembles a class action but fails to satisfy the requirements of the rule.[5] For that reason, notice for the purpose of bringing the claims of unnamed members of the plaintiff class before the court may not issue before a class action has been certified. This procedure, as outlined in Petition of Gabel, 350 F.Supp. 624, 627 (C.D.Cal.1972), cannot be supported by Rule 23.[6]
 
 5. Rule 21
 
 18
 Respondents' argument based upon Rule 21 must fail for the same reason. Rule 21 provides that "(p)arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Respondents contend that since this rule authorizes the district court to order joinder of potential plaintiffs on its own motion, it also authorizes notice to such persons. The premise of this argument is untenable, again because it would effectively permit class actions that do not satisfy the requirements of Rule 23. The reasons, however, require some elaboration.
 
 
 19
 By itself, Rule 21 cannot furnish standards for the propriety of joinder, for it contains none. Hence it must incorporate standards to be found elsewhere.[7] The only standards for proper joinder relevant to this case are Rules 19 and 20 but, as earlier demonstrated, Rule 19 is inapplicable. This leaves Rule 20, which allows persons to join as plaintiffs in a single action if they assert claims arising out of the same occurrence and if those claims share a common question of law or fact. The claims of potential plaintiffs here presumably would meet this test.
 
 
 20
 Rule 21 has been used to join potential plaintiffs who meet the requirements of Rule 20 and who subsequently consent to be joined. Kincade v. Mikles, 144 F.2d 784, 787 (8th Cir. 1944); Gilbert v. General Elec. Co., 347 F.Supp. 1058, 1059-61 (E.D.Va.1972); Zarate v. State Dep't of Health and Rehab. Serv., 347 F.Supp. 1004, 1006 (S.D.Fla.1971) (3-judge court), aff'd mem., 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972); Rekeweg v. Federal Mut. Ins. Co., 27 F.R.D. 431, 435 (N.D.Ind.1961), aff'd on other grounds, 324 F.2d 150 (7th Cir. 1963), cert. denied, 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964); see Helene Curtis Indus., Inc. v. Sales Affiliates, Inc., 105 F.Supp. 886, 899-900 (S.D.N.Y.), aff'd on other grounds, 199 F.2d 732 (2d Cir. 1952); cf. United States v. Louisiana, 354 U.S. 515, 77 S.Ct. 1373, 1 L.Ed.2d 1525 (1957); Torockio v. Chamberlain Mfg. Co., 51 F.R.D. 517, 519 (W.D.Pa.1970); Adams v. Bell Aircraft Corp., 7 F.R.D. 48 (W.D.N.Y.1947). But even if we were to follow these cases, they would not support the notice that would be issued in this case. With two exceptions not relevant here,[8] these cases all involve joinder of four persons or fewer.[9] In the present case, the district court has decided to send notice to the next of kin of several hundred passengers and crew. The effect of notice of this magnitude is the same as notice to an entire class. Such notice will effectively transform the present action into an unwieldly pseudo-class-action not authorized by Rule 23. Rules 20 and 21 cannot be read to circumvent the requirements of that rule.
 
 6. Rule 42
 
 21
 Rule 42 is also deficient as a source of the district court's authority to issue notice. It provides in part:
 
 
 22
 When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
 
 
 23
 Fed.R.Civ.P. 42(a). Respondents rely on the last clause quoted above, arguing that the notice contemplated by the district court is an order "concerning proceedings therein as may tend to avoid unnecessary costs or delay." But notice to potential plaintiffs does not further consolidation of actions already pending. At most, it expedites consolidation of pending actions with actions yet to be filed. The powers conferred by Rule 42 are available only "(w)hen actions involving a common question of law or fact are pending before the court." Fed.R.Civ.P. 42(a). The actions referred to in this phrase are the actions which subsequent clauses of Rule 42(a) permit to be consolidated. Rule 42 may be invoked only to consolidate actions already pending. Cf. Duval v. Bathrick, 31 F.Supp. 510, 511 (D.Minn.1940). Furthermore, the phrase "it may make such orders concerning proceedings therein" in the clause relied upon by respondents refers, through the word "therein," to the pending actions mentioned in the first clause. But notice to potential plaintiffs does not concern proceedings in pending actions but in actions yet to be filed. See Fed.R.Civ.P. 3.
 
 
 24
 Although these reasons for rejecting respondents' construction of Rule 42 may appear overly technical, they do no more than reflect the basic purpose of Rule 42: to authorize consolidation of actions. Provisions regulating notice to nonlitigants would not logically be placed in a rule authorizing consolidation but, if anywhere, in rules providing for joinder of parties or maintenance of class actions. Rule 42 cannot be used to justify notice in this case simply because these other rules do not.
 
 II. The Petition in the Pago Pago Action
 
 25
 Ninety-seven persons died in the Pago Pago crash. At the time that Pan American and Boeing petitioned for mandamus, 24 actions arising out of the crash had been filed. Twenty-two of these actions were brought in the Central District of California and a motion is now before the Judicial Panel on Multidistrict Litigation to transfer the remaining federal actions to that forum. All of the actions now pending in the Central District have been assigned to a single district judge.
 
 
 26
 In one such action, Giles v. Pan Am. World Airways, Inc., CV No. 74-424-PH, the district court, on its own motion, ordered Pan American to file a sealed list of the names and addresses of the Pago Pago crash victims and their next of kin. Pan American promptly moved for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). When this motion was denied, Pan American and Boeing filed this petition for mandamus. They seek to vacate the district court's order and to prevent it from communicating with potential plaintiffs. On motion of Pan American and Boeing, we have stayed the order pending disposition of their petition for mandamus.
 
 
 27
 We need consider this petition only briefly. Because the district court's order manifests its intent to issue notice to potential plaintiffs,[10] we find sufficient evidence of imminent action to justify extraordinary relief. Because the remaining issues have been dealt with in Part I, we grant the petition for the reasons stated there.
 
 III. Orders
 
 28
 The petitions for writs of mandamus or prohibition in Nos. 74-1726, 74-2093 and 74-2240 are granted. Writs of prohibition will issue to prevent the district court from sending notice to persons whose claims arising out of the Pago Pago and Paris crashes are not pending before it, unless and until the particular action involved is properly certified as a class action.
 
 
 29
 It is so ordered.
 
 
 30
 HUFSTEDLER, Circuit Judge (concurring specially):
 
 
 31
 I agree with Judge Wallace's Opinion, except in respect of his including some dicta in the discussion of Rules 21 and 23, upon which I decline to express any premature views. Accordingly, I would conclude the Rule 23 segment of the Opinion with Judge Wallace's observation that "none of the cited cases supports the notice sought in this case." I would limit the Rule 21 discussion to the simple points that Rule 21 furnishes no standards for joinder and hence supplies no foundation for determining who can be joined and notified of joinder. The persons that the district court sought to notify are outside the purview of Rules 19 and 20. Rule 19 is manifestly inapposite. Rule 20 is inapplicable because none of these nonparties is presently asserting any right to relief.
 
 SCHNACKE, District Judge (dissenting):
 
 32
 I dissent. Judge Peirson Hall has had almost unique experience in the handling of airline crash cases involving multiple deaths. He has found, as the record below indicates, that the disposition of such cases is likely to be much complicated, long delayed, and far more costly if the disposition of actions pending before him must await the last of such cases which may reasonably be expected to come before him, either from his district or, as is often the case, from assignment by the Multidistrict Panel. (28 U.S.C. § 1407). It is implicit that he has found that discovery, use and deposing of experts, appraisal of total amount of damage, settlement, and other matters of concern to the Court may be handled faster and better if all potential parties be assembled at the earliest possible time.
 
 
 33
 In order to insure the expeditious handling of the cases before him, Judge Hall has required that the Court be advised of the names and next of kin of all victims of the disasters, with the intention of notifying each potential plaintiff that these actions are pending.
 
 
 34
 The majority, in my view, reaches the wrong result because it contemplates the wrong question. The question is not whether some rule permits the action proposed, but whether any rule, statute, or logical concept forbids it.
 
 
 35
 No court rule is necessary to vest in courts the power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. (Link v. Wabash Railroad Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).
 
 
 36
 If authority of any such rule were required, Rule 42(a) and Rule 1 supply it. Rule 42(a) recognizes the power of the court to make such orders as may tend to avoid unnecessary costs or delay when, as will predictably occur here, actions involving a common question of law or fact are pending before the court.
 
 
 37
 The rejection of Rule 42(a) by the majority is, indeed, "overly technical", as the majority seems to recognize, particularly in the light of the mandate of Rule 1 that we must construe the rules "to secure the just, speedy, and inexpensive determination of every action."
 
 
 38
 The insistence of the majority that some rule must be found to support the Judge's action seems to be based on the misconception that the intended notice to potential plaintiffs is process of some sort. Clearly, it is not. The notice brings in no new parties, imposes no burdens and affords no rights. The recipients of the notice are completely free to disregard it. The notice is in no way like a summons, or a subpoena, or a Rule 23 class notice, or a Rule 20 or 21 joinder order. It is advisory only, and Judge Hall has found, on ample experience, that the advisory notice will expedite the disposition of the cases already pending before him.
 
 
 39
 The majority cites neither rule nor authority forbidding Judge Hall's action, nor does it suggest any reason why it is undesirable, or how it invades the rights of any party.
 
 
 40
 It may be conceded that the potential plaintiffs have no right to be notified, but they are certainly not injured if they are. The actual plaintiffs agree that the notice is desirable. Defendants object to it, but fail to show how any right of theirs is prejudiced. True, they may be precluded from settling cases with potential plaintiffs who are insufficiently advised of their rights, or unaware of a convenient forum in which their rights may be expeditiously adjudicated, but I can't believe the court should extend itself to preserve that opportunity.
 
 
 41
 Judge Hall has, in my view, devised an eminently practical method of handling the cases before him. I see nothing in the law or in reason to forbid it. No right of any party is invaded. Judge Hall should be applauded for his initiative and innovation. The petitions for mandamus or prohibition should be denied.
 
 
 
 *
 Honorable Robert H. Schnacke, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 THE COURT: Your motion that I do not secure or attempt to secure a list of the passengers, their survivors, their country of origin, their next of kin, and their representatives, if any, is denied. Your motion that I shall not send any notice of any kind to those people in the event I receive that list, that likewise is denied. I deem it my duty as a judge in this case to see that everyone who was destroyed in that accident, whether through your fault or whose fault it was, that they should be notified as soon as possible that these actions are pending here, and that they may go here or any place they please if they wish to come here and take advantage of what is going on in this court, they may do so, but if they wish not to do so, that is their privilege, and that certainly is not solicitation to me
 
 
 [2]
 Compare Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 326, 361, 9 L.Ed. 905 (1824) (Marshall, C. J.) (dictum) With United States v. Louisiana, 354 U.S. 515, 77 S.Ct. 1373, 1 L.Ed.2d 1525 (1957)
 
 
 [3]
 Judge Schnacke primarily argues in his dissent that authority to notify prospective plaintiffs rests upon a residual power of the district court that has yet to be limited by rule or statute. But he fails to specify the source of this residual power
 Traditionally in our judicial system, courts are powerless to act until litigants bring claims before them. Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 326, 361, 9 L.Ed. 905 (1824) (Marshall, C. J.) (dictum). The issuance of notice to potential plaintiffs offends this principle in two ways: first, it permits a court to act upon a claim before it becomes the subject of a lawsuit; and second, it permits a court to acquire jurisdiction by encouraging lawsuits. So sharp a deviation from the traditional role of the judiciary requires justification. Resort to a residual power of unspecified origin is insufficient.
 
 
 [4]
 City of Inglewood holds that an asserted class action must be treated as such for jurisdictional purposes. 451 F.2d at 951. Schy finds the discretionary pre-certification notice approved in the Advisory Committee Note to Rule 23, discussed in text infra, unnecessary on the facts before it. 419 F.2d at 1116. Philadelphia Electric postponed settlement of a class action until notice could be issued as required by Rule 23(e). 42 F.R.D. at 326-28
 
 
 [5]
 Indeed, this appears to be the theory of the district judge in an opinion supporting an identical ruling in an earlier case. Petition of Gabel, 350 F.Supp. 624, 627 (C.D.Cal.1972)
 
 
 [6]
 My Sister Hufstedler takes no position on the question of pre-certification notice pursuant to Rule 23. But since our order prevents the district court from issuing any notice before certification of a class action, I believe it is necessary to address the question whether this case falls within any provision of Rule 23 arguably authorizing such notice. Since the record reveals no need for pre-certification notice for either of the purposes arguably permitted by Rule 23, this court may fairly conclude that such notice should not issue. I do not pass upon the district court's power to issue pre-certification notice beyond stating that if available, it does not extend to this case
 
 
 [7]
 Rule 21 has been used to join potential plaintiffs who are necessary parties, see Rule 19(a), or real parties in interest, see Rule 17(a). See United States v. Aetna Cas. & Surety Co., 338 U.S. 366, 381-82, 70 S.Ct. 207, 94 L.Ed. 171 (1949) (dictum); Independent Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468-73, 46 S.Ct. 166, 70 L.Ed. 357 (1926). However, a potential plaintiff is rarely joined as an involuntary plaintiff but usually is joined as a party defendant. Caprio v. Wilson, 513 F.2d 837, 839 (9th Cir. 1975); Eikel v. States Marine Lines, Inc., 473 F.2d 959, 961-62 (5th Cir. 1973); Coast v. Hunt Oil Co., 195 F.2d 870, 872 (5th Cir.), cert. denied, 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651 (1952); 3A J. Moore, Federal Practice P 19.06 (1974); 7 C. Wright & A. Miller, Federal Practice and Procedure §§ 1605, 1606, 1683 (1972)
 
 
 [8]
 Gilbert v. General Elec. Co., 347 F.Supp. 1058 (E.D.Va.1972), permitted joinder of an unspecified number of plaintiffs for jurisdictional and venue purposes. Id. at 1058-61. Adams v. Bell Aircraft Corp., 7 F.R.D. 48 (W.D.N.Y.1947), relied on Rule 21 to join plaintiffs in a class action authorized by statute. Id. at 48-49
 
 
 [9]
 It is unnecessary to adopt the theory of joinder suggested by these cases. Because they permit at most limited, not mass, joinder, they are distinguishable from the present case. We need neither approve nor disapprove them. Other cases may arise that present reasons for notice to potential plaintiffs more compelling than the alleged need to foster pseudo-class-actions. Accordingly, as the issue need not be decided in this case, it is left open
 
 
 [10]
 The district court's order provides in part:
 It is the history of such crashes that suits for damages for the death of occupants are filed in several, sometimes many, different jurisdictions, which results in lengthy duplicated proceedings and which are extraordinarily costly to both plaintiffs and defendants and sometimes with different results unless some means for common discovery and trial on the issue of liability can be found.
 It is, therefore, in the interest of justice that the survivors of those killed should have their rights and damages, if any, resolved as promptly as possible; now, therefore, good cause appearing;
 The Court, sua sponte, HEREBY ORDERS that Pan American World Airways, Inc., within fifteen (15) days hereof, file in the within proceeding, in duplicate, a sealed list of the names and addresses of all of the human occupants of said Pan American World Airways plane and the name and address of each of the survivors of each occupant, or those who claim to be a survivor or survivors so far as is now known.