Holly W. BAUMAN et al., Petitioners,

v.

UNITED STATES DISTRICT COURT, Respondent,

Union Oil Company, Real Party in Interest.

No. 76–2156.

United States Court of Appeals, Ninth Circuit.

July 1, 1977.

Marcy C. Dunlap, Nancy L. Davis, Joan Messing Graff, Wendy W. Williams, Equal Rights Advocates, San Francisco, Cal., submitted for petitioners.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., submitted for respondent.

Robert S. Daggett, Brobeck, Phleger & Harrison, San Francisco, Cal., for real party in interest.

Vera Winter Lee, Equal Employment Opportunity Commission, San Francisco, Cal., for intervenors.

Susan J. Johnson, Equal Employment Opportunity Commission, Washington, D. C., for amicus curiae.

Before HUFSTEDLER, GOODWIN and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Bauman and Espinola, plaintiffs in a sex-discrimination-in-employment suit brought against Union Oil Company under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, moved the district court to certify their action as a class action pursuant to Rule 23(b)(2), Fed.R.Civ.P. Pursuant to Rule 23(c)(1) and (d)(2), the court *conditionally* certified the class, ordered the plaintiffs to "give individual notice to all class members identifiable through reasonable effort," and prescribed the contents of the notice. Bauman and Espinola (hereafter referred to jointly as Bauman) thereupon petitioned this court for a writ of mandamus commanding the district court to modify portions of its order. We decline to issue the writ.

I

In 1973, Bauman filed a complaint against Union Oil, alleging that the company's employment practices in its San Francisco and Sacramento offices regarding hiring, promotion, compensation, discipline, termination and pregnancy leave violated Title VII's proscriptions of sex-based discrimination in employment. The complaint sought injunctive and other equitable relief and back-pay. On October 17, 1975, Bauman moved for an order certifying the action as a class action pursuant to Rule 23(a) and (b)(2), Fed.R.Civ.P. The motion was accompanied by both a thorough brief of the legal issues and an extensive, detailed summary of the factual underpinnings of the complaint and the class certification motion.[1]

On March 19, 1976, the district court responded to the motion with the following oral order:

It's the judgment of the Court with reference to the various motions that we have on file in this matter, first that the plaintiffs' motion for a class certification, with reference to that, I'm going to provisionally certify this as a class under 23(c) (1), provisionally, and I direct the plaintiffs to give notice at their own expense to everyone in the class, and notice should include a provision that the member can opt out, if they so desire to opt out. If they want to stay in, then they should give a short statement of what the discrimination against them has been. If they say there's been no discrimination, then they should so state and are thereby bound by their statement.

Bauman thereafter moved the court to reconsider and modify its order. Specifically, she wanted the court to delete the "opt-out" provision and the provision regarding "a short statement" of discrimination or nondiscrimination.

On April 30, 1976, the district court filed a written order denying the motion for modification. In that order the court both clarified its prescription for the contents of the class notice and set forth its supporting reasoning. The order directed that the notice conform to the following guidelines:

(1) that the class member so notified be allowed to state whether or not she chooses to be excluded from the class, and, if so, whether the reason for that choice was (a) that the class member, while believing she has a claim against this defendant for discrimination on the basis of sex, does not wish to be represented in this class by these plaintiffs, or (b) that the class member does not believe that any discrimination on the basis of sex has been practiced against her by this defendant, in which case she should so state and be bound thereby; and (2) that if the class member so notified desires to remain in the class, she submit a short statement of the nature of the sex discrimination charge she believes she has against this defendant.

In support of the notice requirement, the court stated that "[a]t the time of plaintiffs' request for certification, the court was without a proper factual foundation definitively to conclude that all requirements of

1. Bauman's supporting summary of the facts indicates that the proposed class will consist of at least 414 members.

Rule 23 had been met." Accordingly, the notice was a means of obtaining information in order to determine whether the Rule 23(a) elements of numerosity, typicality, commonality, and adequacy of representation were satisfied prior to final class certification. The court viewed Rule 23(d)(2) as the source of its authority to order the special notice.[2]

Soon after the filing of the order of April 30, Bauman petitioned this court for a writ of mandamus commanding the district court to delete from that order "those provisions . . . which permit class members to 'opt out' of the action below for injunctive relief, and which require class members to 'opt in' by making individualized allegations of discrimination in order to be represented in the said action . .."[3]

## II

One of the most significant challenges presently facing the federal appellate courts centers on the use of their power to issue extraordinary writs under the venerable All Writs Statute, 28 U.S.C. § 1651. Since the advent of the concept of "supervisory mandamus" in *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the challenge to the federal appellate courts has been to formulate objective principles to guide the exercise of their section 1651 power. The dangers of unprincipled use of that power are obvious. In the absence of guiding and limiting principles, appellate use of the peremptory writs could readily subvert the policies underlying the finality rule, 28 U.ひ.C. § 1291, or the carefully limited congressional scheme governing interlocutory appeals, 28 U.S.C. § 1292.[4] Unprincipled use of that power could also operate to undermine the mutual respect that generally and necessarily marks the relationship between federal trial and appellate courts.[5] Further, without articulable and practically applicable guidelines to govern the issuance of extra-ordinary writs, appellate judges would continually be subject to the temptation to grant such relief merely because they are sympathetic with the purposes of the petitioners'

---

**2.** Rule 23(d)(2) provides in part:
  In the conduct of actions to which this rule applies, the court may make appropriate orders: . . . (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, . . . or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action . . . .

**3.** The federal Equal Employment Opportunity Commission, an intervening plaintiff in the main action, filed an amicus curiae brief in support of Bauman's petition. The respondent district court has made no appearance before us but Union Oil Company, the real party in interest, has appeared by way of an answering brief.

**4.** As the Supreme Court recently stated in *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976): [P]articularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation. It has been Congress' determination since the Judiciary

Act of 1789 that as a general rule "appellate review should be postponed . . . until after final judgment has been rendered by the trial court." *Will v. United States*, 389 U.S. at 96 [88 S.Ct. [269], at 274]; *Parr v. United States*, 351. U.S. 513, 520–21 [76 S.Ct. 912, 917–918, 100 L.Ed. 1377] (1956).[6] A judicial
  6 The use of extraordinary writs aside, it is only in narrowly defined circumstances, see 28 U.S.C. § 1292, that the appellate jurisdiction of the courts of appeals extends to interlocutory orders.
readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.

      .     .     .     .     .

**5.** The Supreme Court has articulated one aspect of this particular problem in these terms: "[M]andamus actions such as the one involved in the instant case 'have the unfortunate consequence of making the [district court] judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him' in the underlying case." *Kerr v. United States District Court, supra*, 426 U.S. at 402, 96 S.Ct. at 2124 (citations omitted). See note 3 *supra*.

underlying actions, or because they question the trial court's ability to direct the litigation efficiently or impartially. As with many other facets of judicial power, the continuing effectiveness of an appellate court's section 1651 power depends on its reasoned and principled exercise.

A review of Supreme Court and recent Ninth Circuit cases pertaining to the appellate use of peremptory writs discloses some general admonitory language and five guiding principles. The admonitory language has been partially collected in the Supreme Court's most recent case on the subject, *Kerr v. United States District Court*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), *aff'g*, 511 F.2d 192 (9th Cir. 1975):

> The remedy of mandamus is a drastic one, to be involved only in extraordinary situations. *Will v. United States*, 389 U.S. 90, 95 [88 S.Ct. 269, 273, 19 L.Ed.2d 305] (1967); *Banker's Life & Cas. Co. v. Holland*, 346 U.S. 379, 382–385 [74 S.Ct. 145, 147–149, 98 L.Ed. 106] (1953); *Ex parte Fahey*, 332 U.S. 258, 259, [67 S.Ct. 1558, 1559, 91 L.Ed. 2041] (1947). As we have observed, the writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States*, 389 U.S., at 95, [88 S.Ct. [269], at 273] quoting *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185] (1943). And, while we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of "jurisdiction," *Will v. United States*, 389 U.S., at 95, [88 S.Ct. [269], at 273] the fact still remains that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Ibid.*

*Id.* at 402, 96 S.Ct. at 2124. Other cases and authorities bristle with language likewise suggesting that mandamus will issue only in "drastic," "exceptional" and "extra-ordinary" circumstances. *E. g., Will v. United States*, 389 U.S. 90, 95–96, 107, 108, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Arthur Young & Co. v. United States District Court*, 549 F.2d 686, 691–692 (9th Cir. 1977); *Kerr v. United States District Court*, 511 F.2d 192, 196 (9th Cir. 1975), *aff'd*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Hartley Pen Co. v. United States District Court*, 287 F.2d 324, 328 (9th Cir. 1961); 9 J. Moore, Federal Practice ¶ 110.28, at 302. In addition, as the Supreme Court twice stated in *Will*, review by mandamus does not "run the gauntlet of reversible errors." *Will v. United States, supra*, 389 U.S. at 98 n.6, 104, 88 S.Ct. at 275.

Although this admonitory language is helpful in framing the boundaries of section 1651 power, it serves at most only as a starting point in the effort to develop a specific framework which can assist when practical application of the generalities is required. Even more helpful in that task are the judicial directions discernible from an analysis of the cases dealing with mandamus. From those cases we have identified five specific guidelines: (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. *Kerr v. United States District Court, supra*, 426 U.S. at 403, 96 S.Ct. 2119; *Roche v. Evaporated Milk Ass'n.*, 319 U.S. 21, 26, 27–29, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *Arthur Young & Co. v. United States District Court, supra*, 549 F.2d at 691–692; *American Fid. Fire Ins. Co. v. United States District Court*, 538 F.2d 1371, 1374 (9th Cir. 1976); *Pan American World Airways, Inc. v. United States District Court*, 523 F.2d 1073, 1076 (9th Cir. 1975); *Kerr v. United States District Court, supra*, 511 F.2d at 196; *Belfer v. Pence*, 435 F.2d 121, 123 (9th Cir. 1970). (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) *Arthur Young & Co. v. United States District Court, supra*, 549 F.2d at 691–692; *Pan American World Airways, Inc. v. United States District Court, supra*, 523 F.2d at 1076; *Kerr v. United States District Court, supra*, 511 F.2d at 196; *Belfer v. Pence, supra*, 435 F.2d at 123. (3) The district court's order is clearly erroneous as a mat-

ter of law. *Arthur Young & Co. v. United States District Court, supra,* 549 F.2d at 691–692, 692–697; *Hartland v. Alaska Airlines,* 544 F.2d 992 (9th Cir. 1976); *Green v. Occidental Petroleum Corp.,* 541 F.2d 1335 (9th Cir. 1976); *Commercial Lighting Products, Inc. v. United States District Court,* 537 F.2d 1078, 1079 (9th Cir. 1976); *Pan American World Airways, Inc. v. United States District Court, supra,* 523 F.2d at 1076, 1077–81; *McDonnell Douglas Corp. v. United States District Court,* 523 F.2d 1083 (9th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Kerr v. United States District Court, supra,* 511 F.2d at 196. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. *La-Buy v. Howes Leather Co., supra,* 352 U.S. at 255–60, 77 S.Ct. 309; *McDonnell Douglas Corp. v. United States District Court, supra,* 523 F.2d at 1087. (5) The district court's order raises new and important problems, or issues of law of first impression. *Schlagenhauf v. Holder,* 379 U.S. 104, 111, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Pan American World Airways, Inc. v. United States District Court, supra,* 523 F.2d at 1076.

Although these guidelines are helpful, they of course do not always result in bright-line distinctions. First, the guidelines often raise questions of degree: How clear is it that the lower court's order is wrong as a matter of law? How severe will damage to the petitioner be if extraordinary relief is withheld? Second, rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable. The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators. This last point is borne out by a review of four of the most recent Ninth Circuit cases *granting* extraordinary relief.

In *Green v. Occidental Petroleum Corp., supra,* 541 F.2d 1335, the defendant successfully petitioned for mandamus to reverse certification of a class under Rule 23(b)(1). In granting the extraordinary relief, we noted that the class certification decision was not appealable under either 28 U.S.C. § 1291 or § 1292. Further, the district court's decision, as a matter of law, was quite clearly erroneous, and without extraordinary relief the petitioner would have been prejudiced by "erroneous notice and opt-out procedures."

In *Hartland v. Alaska Airlines, supra,* 544 F.2d 992, we issued a writ of mandamus directing the district judge to release to the petitioners money they had previously been required to pay to a Plaintiffs' Discovery Committee fund. The district judge's assumption of jurisdiction over the petitioners was clearly erroneous and amounted to judicial usurpation of power. Regarding the question of finality, and hence appealability, the majority found the issue close and declined to resolve it, but a concurring member of the panel concluded that the petitioners clearly had no avenue of appeal.

In *Pan American World Airways, Inc. v. United States District Court, supra,* 523 F.2d 1073, we prohibited the district judge in an airline crash case from notifying potential plaintiffs of the pending actions. Direct appeal under section 1291 or section 1292 was not available to petitioners. Also, as we noted, the petitioners would be severely prejudiced in that they could not "be relieved [on appeal] of the burden of actions filed in response to such notice." *Id.* at 1076. Further, we characterized the trial judge's proposed action as "extraordinary" in that it was both novel and not authorized by any rule.

In *McDonnell Douglas Corp. v. United States District Court, supra,* 523 F.2d 1083, we ordered the trial judge in an air crash case to vacate his certification of a class action under Rule 23(b)(1)(A)–(B) and (b)(2). We found the certification decision clearly wrong in light of a prior case. We also stated our awareness "that the district court has reached an *identical* decision in a prior case. . . . Repeated errors of this magnitude in applying the Federal Rules of Civil Procedure may be corrected by mandamus." *Id.* at 1087 (emphasis added, citations omitted).

In none of these four decisions did we grant mandamus on the basis of only one of the five guidelines listed above. Also, in none did we grant extraordinary relief where most of the guidelines pointed against such relief.

### III

■ After applying the five guidelines discussed above to the facts of the present case, we conclude that extraordinary relief is not warranted here.

*1. Does Bauman have other adequate means, such as a direct appeal, to attain the relief she desires?*

Bauman argues, citing *Price v. Lucky Stores, Inc.*, 501 F.2d 1177 (9th Cir. 1974), that two portions of the district court's order are so onerous and damaging to the class action that the order amounts to a denial of class certification and injunctive relief and that the order is therefore appealable under 28 U.S.C. § 1292(a)(1). The offending portions of the order are those that direct that the class notice contain opt-out provisions and what Bauman characterizes as opt-in provisions. It is contended that because of Union Oil Company's allegedly retaliatory practices, and because of the class members' alleged lack of sophistication regarding and understanding of their rights, class members will either opt out or not opt in, thus providing a basis for decertification on numerosity grounds, with a resulting diminution in the scope of injunctive relief.[6]

Because of our construction of the district court's order, *see* part III, 3 *infra*, we do not believe that the order will have the same damaging effect Bauman ascribes to

it. But even if we were to accept her argument, this only leads her further away from her desired goal of demonstrating the prerequisites for extraordinary relief. The availability of a direct appeal would weigh strongly against a grant of mandamus. Moreover, even if the grant of an interlocutory appeal from the order is not a foregone conclusion, the possibility remains—for the very reasons Bauman herself sets forth—that a section 1292(a)(1) appeal may be available. That possibility, or uncertainty, regarding appealability militates against issuance of a writ here. The Supreme Court has repeatedly stated that a mandamus petitioner must "satisfy 'the burden of showing that [his] right to issuance of the writ is "clear and indisputable."' " *Kerr v. United States District Court, supra,* 426 U.S. at 403, 96 S.Ct. at 2124 (citations omitted). This means that Bauman has the burden of showing that a section 1292(a)(1) appeal is *not* available. Because there is substantial uncertainty on that point, her right to the writ is anything but "clear and indisputable," and accordingly she has failed to meet her burden.[7]

*2. Does the district court's order damage Bauman in a way not correctable on appeal?*

This question requires analysis in two parts. The order of the district court—specifically that portion permitting class members to opt out—may have the effect of reducing the size of the class. Alternatively, if sufficient people opt out, it may have the effect of foreclosing class certification. In either case, we must determine whether the damage to Bauman arising from the order is correctable on appeal.

---

**6.** This argument can be clarified by reference to *Price v. Lucky Stores, Inc.,* 501 F.2d 1177 (9th Cir. 1974). There we held that an order refusing to certify a Rule 23(b)(2) class seeking injunctive relief from violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* was appealable. We stated that "the order is an appealable one under 28 U.S.C. § 1292(a)(1) because its *effect* is a 'denial of the broad injunctive relief' which the plaintiffs sought on behalf of the class." *Id.* at 1179 (emphasis added).

**7.** Because of the peculiar elements of a section 1292(a)(1) appeal, *see* note 6 and accompanying text *supra,* Bauman faces a dilemma. Determination that no other means of relief is open to her may also constitute a determination that she is not entitled to the extraordinary relief of mandamus because of the absence of irreparable damage. Likewise with the converse.

■ A recent decision of this court stands as persuasive authority that any injury occasioned by an order of the district court which effectively reduces the size of a certified class may be corrected on appeal after a final judgment and hence is not irreparable. In *Catena v. Capitol Industries, Inc.*, 543 F.2d 77 (9th Cir. 1976), the district court provisionally certified the plaintiff's securities fraud case as a Rule 23(b)(3) class action, but also ordered that notice be

> sent to class members [with] a demand for information concerning individual losses sustained by each shareholder and a provision that anyone failing to provide such information, but not "opting out" of the class within a specified time, would be bound by the judgment but would not be permitted to recover damages should defendants be found liable.

*Id.* at 78. Plaintiff attempted to take a section 1291 appeal from those portions of the order concerning notice. We dismissed the appeal for want of jurisdiction when we found that no *Cohen* exception to the finality rule of section 1291 was available. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We stated:

> While the order appealed from in this case is collateral to the merits and while it presents a serious and unsettled question, we do not find that delaying review would cause irreparable harm to any rights involved. The clause in the notice to class members requiring that information be supplied in order to qualify to collect damages *does not put anyone in a position which cannot be corrected on appeal after the final judgment.* The same is true of those shareholders who failed to send the information but did not opt out of the class. They have not yet been finally denied any damage claim, and the district court may change its mind and award them damages despite the notice warning. If plaintiffs are successful on the liability issue, and the court renders a judgment, and if the court adheres to the

policy of denying recovery to those shareholders, an appeal may be taken at that point. If this court then agrees with [plaintiff] that the affirmative action requirement is invalid, the damage award can be expanded to include those who had been denied recovery because of it. Thus, delaying this appeal until after final judgment *will cause irreparable harm to no one* . . . . .

*Catena v. Capitol Industries, Inc., supra,* 543 F.2d at 78 (emphasis added).

Although *Catena* involved a Rule 23(b)(3) class and money damages, rather than the Rule 23(b)(2) class and injunctive relief involved in the present case, we believe that the principles we articulated in *Catena* are applicable here. If the district court's order —specifically, that portion permitting class members to opt out—is wrong, and if Bauman prevails on the merits, the error can be remedied on appeal without great difficulty. The district court's equitable remedy could at that time be expanded or otherwise modified to include all those improperly excluded from the class.

A somewhat different situation arises if the number of class members who opt out is so great that the district judge denies class certification on grounds of numerosity. Where this occurs, the order would be appealable under 28 U.S.C. § 1292(a)(1) because its effect would be to deny the broad injunctive relief which Bauman sought on behalf of the class. *Price v. Lucky Stores, Inc., supra,* 501 F.2d 1177.[8]

■ Thus, whether the effect of the order is to reduce the size of the class or to foreclose class certification completely, there is no damage to Bauman which is not correctable on appeal. We recognize, of course, that any error in the district court's order may promote delay and the additional expenditure of judicial and private resources. Nevertheless, the orderly and efficient administration of justice is not promoted by using the extraordinary writs to correct ordinary errors or to serve as an alternative to ordinary appeals. *See Will v.*

8. See note 6 *supra.*

*United States, supra,* 389 U.S. at 98 n. 6, 104, 88 S.Ct. 269. Importantly, for our analysis of Bauman's petition, the Supreme Court has cautioned "that the writ is not to be used as a substitute for appeal . . . even though hardship may result from delay and perhaps unnecessary trial . . ." *Schlagenhauf v. Holder, supra,* 379 U.S. at 110, 85 S.Ct. at 238 (citations omitted).

### 3. Is the district court's order clearly erroneous as a matter of law?

■ This question requires analysis of three separate aspects of the district court's order: (1) the district court's use of its Rule 23(d)(2) discretionary power to notify the class to determine whether Rule 23(a) prerequisites to a class action are satisfied; (2) the inclusion in the ordered notice of opt-out provisions; and (3) the use of notice to members of a Rule 23(b)(2) class to measure adequacy of class representation.[9] This analysis in turn can be substantially furthered by a careful determination of exactly what the district court's order does and does not require. First, the order provides that the notice shall *allow* class members to respond. Nowhere does the order direct that the notice *require* members to respond. Second, under the order, there is *no* penalty, such as exclusion from the class, for failure to respond.[10] Third, the court will use the response of opting-out members both to determine numerosity and to exclude those members from the benefits of any remedy in the event liability is affixed.

*A. Rule 23(d)(2) discretion.* Bauman is not contending that a district judge per se abuses his Rule 23(d)(2) discretionary power when he uses it as an aid to determine whether Rule 23(a) prerequisites to a class action are satisfied. Bauman's contention here is that the manner in which that power is used in *this* case amounts to an abuse of discretion. In particular, she argues that her showing of entitlement to a class certification order was so strong that no need exists for additional steps—such as the ordered notice—to determine compliance with Rule 23(a).

■ We believe that Bauman's documentation regarding numerosity, typicality and commonality is more than adequate to sustain an order certifying the class under Rule 23(b)(2). *See Blackie v. Barrack,* 524 F.2d 891, 900–08 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Indeed, had the court refused to certify the class on the basis of Bauman's apparently uncontroverted documentation, the decision most probably would have been reversed on appeal. *See generally Gibson v. Local 40, Supercargoes & Checkers,* 543 F.2d 1259 (9th Cir. 1976); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 339–42 (10th Cir. 1975). Given this evaluation of the documentation, the question before us is considerably narrowed: When named plaintiffs make an initial showing of compliance with Rule 23(a), does a court-ordered notice seeking further information from the class regarding Rule 23(a) requirements amount to an abuse of discretion?

**9.** Bauman makes a separate attack on that provision of the district court's order threatening to bind (i. e., exclude from relief) class members whose responses indicate a belief that no "discrimination on the basis of sex has been practiced against [them] by this defendant." Bauman argues that this provision is contrary to an important Title VII principle: "[T]here can be no prospective waiver of an employee's rights under Title VII." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). A careful reading of *Alexander,* however, reveals a different meaning to "prospective waiver" than that suggested by Bauman. The Court meant that an employee could not contractually waive his Title VII rights to be free of employment discrimination in the same way he could, through a

collective bargaining agreement, waive his right to strike or to engage in other activities protected by the National Labor Relations Act. Accordingly, under the district court's order in the present case, a class member does not "prospectively waive" her Title VII rights within the meaning of *Alexander.* Rather, she accepts the same consequences faced by all employees who believe that they have no Title VII claim (whether, in fact, they do or not): she is eventually time barred from bringing a claim. 42 U.S.C. § 2000e–5(e).

**10.** Bauman's attack on the order appears to proceed on the assumption that the notice must *require* members to respond and that inaction will result in exclusion from the class.

We believe the answer to that question is no—*if* nonresponses are *not* used to measure numerosity. In such a case, the notice would at worst be unnecessary.[11] If the district court intends, however, to use non-responses to determine that the numerosity requirement has not been satisfied, it is abusing its discretion because the probable practical effect of the notice would be to preclude all class actions in major employment discrimination cases. This result would run counter to the principle that class actions are generally appropriate in Title VII employment discrimination cases. *See Gay v. Waiters' and Dairy Lunchmen's Union,* 549 F.2d 1330, 1333 (9th Cir. 1977); *Rich v. Martin Marietta Corp., supra,* 522 F.2d at 340 & cases cited there; *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719–21 (7th Cir. 1969).

*B. The opt-out provision.* Neither the Supreme Court nor our court has yet decided whether members of a Rule 23(b)(2) class may exclude themselves from the class. Among other federal courts, there is a split in authority. Most courts have accepted the conclusion of Professor Moore that "[m]embers of the class in an action under (b)(1) or (b)(2) have no privilege of opting out." 3B J. Moore, Federal Practice ¶ 23.60, at p. 23–1202 (2d ed. 1977). *E. g., Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 249, 252–53 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Air Line Stewards & Stewardesses Ass'n v. American Airlines, Inc.,* 490 F.2d 636, 642 (7th Cir. 1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974); *Bertozzi v. King Louie International, Inc.,* 420 F.Supp. 1166, 1180–81 (D.R.I.1976); *Redhail v. Zablocki,* 418 F.Supp. 1061, 1067 (E.D. Wis.1976) (three-judge court); *Brandt v. Owens-Illinois, Inc.,* 62 F.R.D. 160, 167–68 (S.D.N.Y.1974); *Van Gemert v. Boeing Co.,* 259 F.Supp. 125, 130 (S.D.N.Y.1966).[12] Some courts, however, have permitted members of a Rule 23(b)(2) class to withdraw from the action. *Walker v. Styrex Industries,* 21 Fed.Rules Service 2d 355 (M.D.N.C. Jan. 7, 1976);[13] *Ostapowicz v. Johnson Bronze Co.,* 54 F.R.D. 465 (W.D.Pa. 1972);[14] *see Clark v. American Marine*

---

**11.** We make this conclusion here because the district court's order does *not* threaten exclusion for nonresponse.

**12.** The court in *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), provided the following reasoning for its view that Rule 23 does not permit members of a (b)(2) class to opt out:

Any resultant unfairness to the members of the [Rule 23(b)(2)] class [caused by the bar against opting out] was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation.

*Id.* at 249 (footnote omitted). *See also id.* at 252–53.

**13.** In *Walker,* blacks claiming employment discrimination brought a Title VII class action. The court concluded that the suit was maintainable as a class action under either Rule 23(b)(2) or (b)(3) because both injunctive relief and money damages were sought. The court noted that if the class were certified under (b)(2), no notice would be *required* by Rule 23(c). Nevertheless, it pointed to its discretionary power under Rule 23(d)(2) and ordered notice of a type similar to that required by the district court in the present case.

These men and women deserve the right to know that a suit is underway, *to choose to withdraw from it if they wish so to do,* or to be represented by counsel of their own choosing. It is, therefore, the opinion of the court that notice, such as that set forth in Rule 23(c)(2), should be required whether this action is viewed as one arising under Rule 23(b)(2) or 23(b)(3).

21 Fed.Rules Service 2d at 358 (emphasis added).

**14.** The reasoning in *Ostapowicz* is similar to that in *Walker,* see note 13 *supra.* The court in *Ostapowicz* stated:

While defendant calls attention to the fact that plaintiff's complaint only sought to maintain a class action pursuant to Rule 23(b)(2) wherein notice is not required, this overlooks the fact that the court has determined that this class action is properly maintainable under both 23(b)(2) and 23(b)(3) as to which latter type of action notice is required under Rule 23(c)(3). Regardless of this the court has discretionary power to require notice under the provisions of Rule 23(d) and in our discretion we do require that such notice be given so that requirements of due process be satisfied and all members of subclasses a [all present female employees], b [all past female employees] and d [all females who have sought and been denied em-

*Corp.*, 297 F.Supp. 1305, 1306 (E.D.La.1969). In light of this absence of Supreme Court and Ninth Circuit decisions and a split of authority in other jurisdictions, we simply cannot conclude that the district court's order is clearly erroneous as a matter of law as that term is used in mandamus analysis.

*C. Notice and adequacy of class representation.* The order allows a class member to state, in response to the class notice, that "while believing she has a claim against this defendant for discrimination on the basis of sex, [she] does not wish to be represented in this class by these plaintiffs . . . ." Because of explicit language in Rule 23, this particular portion of the order stands on surer legal footing than the balance of the order. Rule 23(d)(2) provides in part that the district court "may make appropriate orders . . . requiring . . . that notice be given in such manner as the court may direct to some or all members of . . . *the opportunity of members to signify whether they consider the representation fair and adequate* . . . ." (Emphasis added.) It would seem to be anything but an abuse of power, or a clear legal error, for the district court to do exactly what the federal rules state it may do. This portion of the order is facially unassailable. *See Hoston v. United States Gypsum Co.*, 67 F.R.D. 650, 658 (E.D.La.1975).

■ We emphasize that our analysis of the district court's order is based on the following construction of that order: (1) Class members are permitted but not required to respond. (2) Nonresponding class members will not be excluded from the class. (3) Nonresponses will not be used to determine that the numerosity requirement has not been met. If the district court has other intentions than these, our analysis might be different and may lead to a finding of clear error. Our construction of the order, however, follows fairly from its language. Also, we believe it wise to adopt any fair reading of a district court order

ployment because of sex discriminatory practices] be given an opportunity to join

that enables us to avoid wielding the mandamus club.

*4. Is the district court's order an oft-repeated error and does it therefore manifest a persistent disregard of the federal rules?*

Bauman argues that the present order is part of a recurring pattern of similar and erroneous rulings by the same district judge and that therefore this case is within the scope of the principle articulated by the Supreme Court in *LaBuy v. Howes Leather Co., supra*, 352 U.S. at 257–60, 77 S.Ct. 309, and by us in *McDonnell Douglas Corp. v. United States District Court, supra*, 523 F.2d at 1087. As instances of prior similar and erroneous rulings by the district court, Bauman relies on two orders of the same judge that we reversed on appeal *subsequent* to the entry of the present order. *Gay v. Waiters' and Dairy Lunchmen's Union, supra*, 549 F.2d 1330, *rev'g* 10 FEP Cases 864 (N.D.Cal.1975); *Roberts v. Golden Gate Disposal Co.*, No. 75–3114, (9th Cir. March 11, 1977). (Unpublished memorandum.)

We believe that the orders in *Gay* and *Roberts*, even though reversed on appeal, cannot be coupled with the present order to bring this case within the scope of *LaBuy* and *McDonnell Douglas*. Neither *LaBuy* nor *McDonnell Douglas* applied the "persistent disregard of the federal rules" concept to a district judge who had not received, prior to making the objectionable order, warning that such was erroneous. In *LaBuy*, the Supreme Court was careful to point out that the Seventh Circuit had warned its district judges against excessive use of reference to special masters for at least 17 years before Judge LaBuy's improper reference. 352 U.S. at 257–58, 77 S.Ct. 309. In *McDonnell Douglas*, we issued a writ of mandamus against a district judge who had certified a class under Rule 23(b)(1) *after* a decision of this court, *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d

*or opt out.* 54 F.R.D. at 466 (emphasis added).

461 (9th Cir. 1973), that rendered the certification clearly erroneous. 523 F.2d at 1085–87. Since neither we nor the Supreme Court has yet held that an order of the type being reviewed here is erroneous, and since, as noted above, there is a split of authority regarding the propriety of permitting class members to opt-out of Rule 23(b)(2) actions, the "persistent disregard" concept of *LaBuy* is simply not applicable in the present case.

### 5. Does the district court's order raise issues of first impression and create new and important problems?

As noted above, this petition does *not* raise the issue whether a district judge may use his Rule 23(d)(2) power as an aid in determining satisfaction of Rule 23(a) requirements. Petitioners are objecting only to the way the district court is using that power in this particular case. The controversy here, therefore, is necessarily tied to the peculiar facts of this action and accordingly is of narrow scope. It does not begin to approach the magnitude of the issues raised by the district court's order in *Schlagenhauf v. Holder, supra*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152: (1) Does rule 35 of the Federal Rules of Civil Procedure violate the Constitution or the Enabling Act? (2) Does Rule 35 ever permit the mental or physical examination of a defendant? (3) What is the meaning of the terms "in controversy" and "good cause" in Rule 35?

The order does reveal, however, an intention on the part of the district judge to permit class members to opt out of a Rule 23(b)(2) class. While the question whether class members can opt out of a Rule 23(b)(2) action is open in this circuit, and even assuming, without deciding, that this would constitute the type of new and important issue that could be considered in a mandamus proceeding, it should be remembered that the present order reveals only an *intention* to permit opting out. As we noted

when reviewing a somewhat similar order in *Catena v. Capitol Industries, Inc., supra*, 543 F.2d 77, the district judge may change his mind and not carry into effect any intention he may presently have to exclude class members. *Id.* at 78. If the opting-out question is deemed sufficiently new and important to warrant mandamus review, that review may more appropriately be of the order actually excluding opting-out members (if such an order is ever made). Such a course would avoid the risk of reviewing unnecessarily and prematurely an issue of first impression.[15] *See Arthur Young & Co. v. United States District Court, supra*, 549 F.2d at 691–692.

### IV

Our final task is to review the guidelines as they apply to the facts of this case and to determine in light of the guidelines whether our writ should issue. In doing so, we find that no close analysis is required. We are not faced here with the more difficult task which would arise when some guidelines suggest one conclusion while others suggest the opposite, thereby requiring us to measure and balance. Here all five guidelines, when applied to the facts of this case, point substantially in the same direction. (1) Bauman may be able to appeal the order directly under 28 U.S.C. § 1292(a)(1). Uncertainty on this point hinders, not helps, her position. (2) Requiring Bauman to appeal will not result in irreparable damage. (3) It is not necessary for us to hold that the district court's order, when narrowly but fairly construed, is clearly erroneous. If the order contains error, it lies in the opt-out provisions, but given the split in authority on this issue, the error would be anything but the required clear error. (4) There has been no showing of a "persistent disregard of the federal rules," especially in light of the absence of any prior warnings to the district judge. (5) Finally, even if we were to assume that the opt-out provisions raise "new and important problems" and

---

**15.** By comparison, the order reviewed by mandamus in *Schlagenhauf* was one actually directing a wide-ranging physical and mental examination of the defendant. Thus in that case there was a need for immediate review in order to protect the interests of the defendant.

"issues of first impression," review of those issues now would be unwise and premature.

Bauman's failure to meet her burden under the guideline analysis, coupled with the Supreme Court's direction requiring restraint in the use of extraordinary relief, clearly dictates our result. Bauman has failed to establish that her right to a writ of mandamus is "clear and indisputable." *Kerr v. United States District Court, supra,* 426 U.S. at 403, 96 S.Ct. 2119.

WRIT DENIED.

HUFSTEDLER, Circuit Judge, specially concurring:

On the sole ground that petitioners have an alternative remedy to their petition for an extraordinary writ by way of an interlocutory appeal, I concur in the majority's conclusion that mandamus is inappropriate. I cannot join in the rationale of the majority opinion because, in my view, it rests upon a mischaracterization of the order which is before us.

The majority construes Judge Conti's notice order as if it provided that class members who do not respond to the notice will not be excluded from the class and that nonresponses will not be used to decide that Fed.R.Civ.P. 23(a)(1)'s numerosity requirement has not been met. The language of the order itself, together with Judge Conti's own explanation of his order, forbids that generous construction. Silence, or nonresponse, by members of the class means exclusion from the class. The order states, *inter alia,* that ". . . notice should include a provision that the member can opt out, if they so desire to opt out. If they want to stay in, then they should give a short statement of what the discrimination against them has been." Judge Conti admits to this interpretation of his order in his own explanation of the order:

". . . Any class member here who feels that there was even the remotest incident of sex discrimination against her by the company will simply opt in, and her claim will be litigated in this action." (Exhibit "D", at p. 6.)

". . . That order . . . directed that such individual notice contain the following provisions . . . (2) that if the class member so notified desires to remain in the class, she submit a short statement of the nature of the sex discrimination charge she believes she has against this defendant." (*Id.* at p. 2.)

The unmistakable purport of Judge Conti's order is to require members of the class to opt in, and the employee who does not opt in is excluded from the class as if she had affirmatively opted out of the class action. The majority also incorrectly concludes that "[n]onresponses [to the notice provisions] will not be used to determine that the numerosity requirement has not been met." But Judge Conti did not limit the use to which he intends to put the data received from the notice. Both "nonresponses" and responses will be used to determine "(a) the approximate size of the class, so that a decision regarding numerosity could be made" and "to elicit information on which this court could decide with greater certainty whether the requirements of Rule 23(a), concededly requisite to class certification, were met here." (Exhibit "D", at p. 4.)

The district court's motivating purpose for ordering opt in notice is transparent: It is patently to destroy this class action, a result that cannot be squared with Rule 23 as drafted and as consistently interpreted in Title VII suits.[1]

---

1. *See Gay v. Waiters' and Dairy Lunchmen's Union* (9th Cir. 1977) 549 F.2d 1330, 1333 ("[W]e believe that a trial court's discretion to determine whether a Title VII action shall proceed as a class action is limited by the Congressional purpose expressed in the Act. Employment discrimination based on . . . sex . . . is by definition class discrimination. . . . Since the purpose of Title VII is to eliminate such class based discrimination, class

actions are favored in Title VII actions for salutary policy reasons. Other circuits have considered the issue of class litigation of Title VII claims and have reached the conclusions that class actions are consistent with the broad remedial purpose of Title VII." (footnote omitted).); *Wetzel v. Liberty Mutual Ins. Co.* (3d Cir. 1975) 508 F.2d 239, 254 ("Suits brought by private employees are the cutting edge of the Title VII sword which Congress has fashioned

If I were not convinced that an alternative remedy lies to review Judge Conti's order, I would conclude that mandamus would be appropriate. At best, the line between those cases in which mandamus is appropriate and those in which it is not, is fuzzy. But, to borrow a phrase from the majority, where, as here, a petition stimulates more than the reviewing tribunal's sympathy "with the purposes of the petitioners' underlying actions," mandamus is in order "where a district judge [has] displayed a persistent disregard of the Rules of Civil Procedure promulgated by this Court . . . ." (*Will v. United States* (1967) 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 *(citing LaBuy v. Howes Leather Co., Inc.* (1957) 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290).)

The present suit is not the first instance of Judge Conti's use of unacceptable readings of Fed.R.Civ.P. 23 to condemn Title VII actions to premature deaths. (*See Gay v. Waiters' and Dairy Lunchmen's Union, supra; Roberts v. Golden Gate Disposal Co.,* (9th Cir. March 11, 1977). (Unpublished opinion No. 75–3114, cited not for the legal authority of the opinion, but for law of this particular district court's record.).) Judge Conti has consistently ignored Congress' admonishment in drafting Title VII that Rule 23 should not be restrictively interpreted to discourage the use of class actions to remedy employment discrimination. (*See* 118 Cong.Rec. 4942 (1972) ("In establishing the enforcement provisions under this subsection . . . it is not intended that any of the provisions contained therein are de-

signed to affect the present use of class action lawsuits under Title VII in conjunction with Rule 23. . . . The courts have been particularly cognizant of the fact that claims under Title VII involve the vindication of a major public interest, and that any action under the Act involves considerations beyond those raised by the individual claimant. As a consequence, the leading cases in this area to date have recognized that Title VII claims are necessarily class action complaints . . . .") (remarks of Senator Williams). *See also Gay v. Waiters' and Dairy Lunchmen's Union, supra* at p. 1333, in which we noted that Congress specifically rejected an amendment to the Equal Employment Opportunity Act of 1972 that would have prohibited class actions in suits seeking back pay. (" '. . . Title VII actions are by their nature class complaints and that any restrictions on such actions would greatly undermine the effectiveness of Title VII.' " *Quoting from* S.Rep.No.92–415, 92nd Cong., 1st Sess., p. 27 (1971)).) As we observed in *Gay*:

"in determining whether an action alleging discriminatory employment practices shall be allowed to proceed as a class action, a trial court must consider the broad, remedial purposes of Title VII and must liberally interpret and apply Rule 23 so as not to undermine the purpose and effectiveness of Title VII in eradicating class-based discrimination." (549 F.2d at p. 1334.)

Because I am confident that petitioners have a remedy by way of an interlocutory appeal, I do not insist upon the issuance of

to fight a major enemy to continuing progress . . . in our nation, discrimination in employment. . . . Class actions . . . are powerful stimuli to enforce Title VII. The imposition of notice and the ensuing costs often discourage such suits. . . . Therefore, we are reluctant to impose notice requirements . . . for Title VII(b)(2) actions unless Rule 23 so requires or unfairness will result to the parties."); *Manual for Complex Litigation,* 1 (Pt. 2) Moore's Federal Practice § 1.45, p. 47 (1976) (". . . The requirement of 'opting-in' must, therefore, under Rule 23 as it is presently written, be regarded as a clear abuse of discretion."); Miller, Problems of Giving Notice in Class Actions (1973) 58 F.R.D. 313, 325; 118

Cong.Rec. 4942 (1972) (remarks of Sen. Williams); Note, The Rule 23(b)(3) Class Action: An Empirical Study (1974) 62 Geo.L.J. 1123, 1149–50 (". . . The opt in procedure was viewed as unfair in requiring uneducated . . . or fearful class members to take affirmative action at an early stage in the litigation . . . . This partial solution would not solve another problem associated with an opt in device, described by an attorney who successfully prosecuted a Title VII action. He pointed out that whenever a class is composed of employees, members are reluctant to take affirmative action early in the suit for fear of reprisals by the employer." (footnotes omitted).)

mandamus. (*See Arthur Young & Co. v. United States District Court* (9th Cir. 1977) 549 F.2d 686, 691–92.) Although I recognize that generally an order certifying a class action is a non-appealable interlocutory order (*see Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891; *Arthur Young & Co., supra* at p. 697), the present case falls within the purview of *Price v. Lucky Stores, Inc.* (9th Cir. 1974) 501 F.2d 1177. In *Price*, we permitted plaintiffs to appeal from an interlocutory order, which order had the "effect . . . [of] a 'denial of the broad injunctive relief' . . . [sought by] the plaintiff . . . on behalf of the class." (*Id.* at 1179. *See also Waters v. Heublein, Inc.* (9th Cir. 1976) 547 F.2d 466, *cert. petition filed* (April 18, 1977) 45 U.S.L.W. 3708; *Inmates of San Diego County Jail in Cell Block 3B v. Duffy* (9th Cir. 1975) 528 F.2d 954.) Here as in *Price*, the district court's order constitutes an effective denial of certification; and because that denial affects the scope of the injunctive relief sought, the order is appealable under Section 1292(a)(1) (1966). In *Gay v. Waiters' and Dairy Lunchmen's Union, supra,* we also applied the reasoning of *Price v. Lucky Stores, Inc., supra,* to entertain an appeal from a Title VII emasculating order issued by Judge Conti which denied class certification in a Title VII suit.

Accordingly, because *Price* supplies petitioners with an alternative remedy, I join in the majority's conclusion that mandamus should not issue in this case.