**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARCIANO PLATA,
                    *Plaintiff-Appellee,*

J. CLARK KELSO,
                    *Receiver,*

                v.

ARNOLD SCHWARZENEGGER,
Governor; JOHN CHIANG,
Controller,
                    *Defendants-Appellants.*

No. 08-17412

D.C. No.
3:01-cv-01351-TEH

In re: ARNOLD SCHWARZENEGGER, et
al.,

ARNOLD SCHWARZENEGGER, et al.,
                    *Petitioners,*

                v.

UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA (SAN
FRANCISCO),
                    *Respondent,*

MARCIANO PLATA, et al.; J. CLARK
KELSO, Receiver,
                    *Real Parties in Interest.*

No. 08-74778

D.C. No.
3:01-cv-01351-TEH

OPINION

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, District Judge, Presiding

Argued and Submitted
February 12, 2009—San Francisco, California

Filed March 25, 2009

Before: Mary M. Schroeder, William C. Canby, Jr. and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Canby

## COUNSEL

Daniel J. Powell, Deputy Attorney General, California Department of Justice, San Francisco, California, for the defendants-appellants/petitioners.

James J. Brosnahan, Morrison & Foerster, LLP, San Francisco, California, for the receiver, J. Clark Kelso.

## OPINION

CANBY, Circuit Judge:

This case arises out of a receivership created by the district court to oversee the provision of health care at prisons under

the jurisdiction of the California Department of Corrections and Rehabilitation ("CDCR"). J. Clark Kelso ("the Receiver") brought a motion for contempt against California Governor Arnold Schwarzenegger and California State Controller John Chiang ("the State") for failure to fund the Receiver's capital projects. After a hearing, the district court entered an order on October 27, 2008 ("the Order" or "the October 27 Order"), which directed the State to transfer $250 million to the Receiver by November 5, 2008, and to appear in a contempt hearing shortly after that date if it had not done so. The State appeals on the grounds that the October 27 Order violates California's Eleventh Amendment immunity and the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"). Alternatively, the State asks this court to issue a writ of mandamus to halt the implementation of the October 27 Order. Because the October 27 Order clearly contemplates further proceedings, rendering it non-final, we dismiss this appeal for lack of jurisdiction. We also conclude that the requirements for issuance of the extraordinary writ of mandamus are not met, and we accordingly deny the petition for mandamus.

### *Factual Background*

This litigation has a long history, of which we will set forth only a few segments. In 2001, the plaintiffs in this case brought this class action on behalf of the inmates of the California state prisons, alleging that state officials were providing inadequate health care in violation of the Eighth Amendment and the Americans with Disabilities Act. In 2002 and 2004, the district court entered orders, to which the plaintiffs and the State stipulated, intended to remedy these violations. Following six days of evidentiary hearings in 2005, the district court issued findings detailing a long history of constitutional violations and a failure of California to comply with remedial orders. California admitted that it was unable to comply with the injunctive relief to which it had stipulated. In response, the district court in 2006 appointed a Receiver and conferred upon him all of the powers of the Secretary of

CDCR with respect to delivery of medical services. The State did not appeal the order appointing the receiver. *See* 28 U.S.C. § 1292(a)(2) (authorizing interlocutory appeal from order appointing receiver).

The order appointing the Receiver stated that the purpose of the Receiver was to "effectuate the restructuring and development of a constitutionally adequate medical health care delivery system" with the goal of "developing, implementing, and validating a new, sustainable system that provides constitutionally adequate medical care to all class members as soon as practicable." This order required that the state pay for all the costs of implementing the Receiver's policies, plans, and decisions. It also required that the Receiver file reports detailing his remedial plans, including a frequently-updated "Plan of Action," which has, at various times, included plans to construct new facilities.

In May 2007, the Receiver filed a Plan of Action draft which called for construction of 10,000 new beds. In response, California joined the Receiver's motion to modify the original stipulated orders in order to accommodate "the changed circumstances reflected by the need for [the Receiver's] appointment, and in order to facilitate implementation of the [Plan of Action]." The district court granted this motion. The Receiver also applied for an Order Waiving State Contracting Statutes in order to effectuate this plan. This application discussed plans to construct a new medical facility, and California filed a statement of non-opposition in response. A second draft of the "Plan of Action" was filed by the Receiver in November 2007, and again California made no objections. Finally, in March 2008, the Receiver released a draft of a "Turnaround Plan of Action," which stated that the Receiver "will supervise the creation of expanded prison health facilities and housing for approximately 6% of CDCR's existing inmate population (i.e., approximately 10,000 inmates)." The Receiver accepted public comments from various sources, including the State, and filed this plan in June 2008. The dis-

trict court issued an order approving the Turnaround Plan, and California did not object to or appeal from this order.

In July 2008, the Receiver requested $204.6 million that it claimed was necessary to continue with the implementation of its described plans. California refused to comply, and on August 13, 2008, the Receiver filed a motion for an order holding California in contempt for failure to fund these projects. On October 27, 2008, the district court held a hearing scheduled as an "intermediate step short of a contempt finding." After the hearing, in which California stated in its brief that it was "unable to provide any of the unencumbered [previously appropriated] funds to the Receiver," the district court issued the October 27 Order discussed in greater detail below. California filed a notice of appeal and sought a stay from the district court, which was denied. That same day, this court granted an emergency motion for a stay and set an expedited briefing schedule. As an alternative to its appeal, the State also filed a petition for mandamus, which is consolidated with the appeal for purposes of this opinion.

**Discussion**

1.  *The Appeal.*

**[1]** The relevant portion of the October 27 Order states:

> (1) Defendants are to transfer $250 million to the Receiver no later than November 5, 2008.

> (2) If Defendants fail to transfer $250 million to the Receiver by November 5, 2008, Defendants are hereby ORDERED TO SHOW CAUSE starting at 9:00 AM on November 12, 2008, or as soon thereafter as counsel may be heard, why they should not be held in contempt for failing to comply with this Order to continue funding implementation of the Receiver's previously approved plans. On November

> 7, 2008, the parties shall file with the Court a notice *identifying any witnesses they intend to call at the hearing. The Court will issue a more detailed scheduling order, including time limits, closer to the hearing date.*

(Emphasis added). The Receiver and California characterize this Order in drastically different ways, but essentially differ on whether or not it is "final" as required for this court to assert jurisdiction. *See* 28 U.S.C. § 1291. We agree with the Receiver that the October 27 Order is not final, but is rather an interim step toward further proceedings. A civil contempt order is ordinarily not appealable until the district court has adjudicated the contempt motion and applied sanctions. *SEC v. Hickey*, 322 F.3d 1123, 1127 (9th Cir. 2003). On that ground alone, the October 27 Order is unappealable.

**[2]** The State argues that awaiting sanctions will not enable it to raise the challenges it seeks to raise here, because ordinarily a litigant defending a contempt charge may not raise objections to the underlying order that it violated. *See United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999). That dilemma may simply be a consequence of the State's failure to follow more appropriate procedures, which we will discuss, to challenge the receivership and its plans. In any event, we are not entirely convinced that the district court's order so confines the proposed proceedings. The district court's call for a witness list and its notification of a further scheduling order suggests a hearing in which more is at issue than whether or not the State has delivered the $250 million. At the very least, we are left with considerable uncertainty whether the October 27 Order might have been affected or changed as a result of the proposed hearing. We also lack the benefit of a written district court decision addressing California's arguments regarding the Eleventh Amendment and the PLRA. In short, we see no reason to deviate from the ordinary rule that renders the district court's order non-final for purposes of

appeal. If the district court sanctions the State defendants for contempt, they can appeal.

**[3]** The October 27 Order also is not appealable as a "post judgment order" under *United States v. State of Washington*, 761 F.2d 1404 (9th Cir. 1985). It is true that orders that relate to fully adjudicated issues, including those that are currently controlled by a consent decree,[1] do not implicate the same concerns that emerge when an appeal of an issue that has not been adjudicated is heard. *See id.* at 1406. Nevertheless, these orders, too, are "fully adjudicated" in the appropriate sense only if the order finally adjudges the contempt and imposes sanctions. *See Stone v. City & County of San Francisco*, 968 F.2d 850, 854-55 (9th Cir. 1992); *accord Hickey*, 322 F.3d at 1127 ("an adjudication of civil contempt is not appealable *until sanctions have been imposed*") (internal quotation omitted); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983) ("Once the finding of contempt has been made and a sanction imposed, the order has acquired all the elements of operativeness and consequence necessary . . . to have the status of a final decision under § 1291.") (internal quotation marks and citation omitted).

**[4]** The State argues that this precedent does not apply because the October 27 Order is not a "contempt order" within the meaning of these cases. Rather, the State argues that the second half of the Order, which schedules a hearing to show cause, is merely a recitation of the unstated presumption that contempt proceedings may always follow if a party fails to act in accordance with a court's order. The October 27 Order, however, clearly follows from the Receiver's motion to find the State in contempt. The ordinary rule that contempt orders are not appealable until sanctions are imposed thus governs. Moreover, for reasons already stated, we remain unconvinced in light of the text of the Order and the broader

---

[1]The parties use the term "consent decree" to refer to the original stipulated orders entered in this case. We use the term similarly herein.

posture of this case that the October 27 Order is "final" and will not undergo any further modification by the district court. *See Way v. County of Ventura*, 348 F.3d 808, 810 (9th Cir. 2003) ("An order is final . . . if it (1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter.") (quotation omitted). Again, if the Order remains as it is and is enforced with contempt sanctions, that ruling can be appealed.

[5] Finally, the State's other two claimed bases for jurisdiction are not convincing. This is not a "collateral" order under relevant precedent. In order to be considered as such, it would have to "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (footnote omitted). None of these three factors exists in this case, because the challenges the State seeks to raise here are fully intertwined with the central validity of the underlying litigation, the consent decrees, the receivership and its plans. Those challenges can be raised on appeal when they are presented in appropriate form to the district court and ruled upon in a final order.

[6] Nor is the October 27 Order reviewable as an "affirmative injunction" or an order for the immediate payment of funds. An order requiring a party to pay money to a receiver made pursuant to a previously unappealed order appointing the receiver "does not constitute an 'injunction' within the meaning of 28 U.S.C. § 1292(a)(1)." *FTC v. Overseas Unlimited Agency, Inc.*, 873 F.2d 1233, 1235 (9th Cir. 1989). The October 27 Order falls squarely within this description. An order issued after a consent decree can be heard on appeal as an "affirmative injunction" only if it modifies the previous consent decree. *See Thompson v. Enomoto*, 815 F.2d 1323, 1327 (9th Cir. 1987) (an order is not appealable as an affirmative injunction when it is "pursuant to, and not a modification of," the consent decree). Certainly nothing in the October 27

Order modified the consent orders; indeed, the October 27 Order clearly seems to be founded in the earlier consent orders and the receivership that was imposed to enforce them. Therefore we cannot entertain a challenge to the October 27 Order as an "affirmative injunction" under 28 U.S.C. § 1292(a)(1).

**[7]** The entire context of the district court proceedings makes clear to us that the State is trying to make the appeal of the October 27 Order carry more weight than it can bear. The Order appears to have been issued pursuant to the underlying consent decree and the Order Appointing Receiver, which the State did not appeal. A central procedural difficulty with this appeal is that the State's grounds—alleged violations of the State's Eleventh Amendment immunity and of the PLRA—are more properly addressed to the consent orders or the receivership itself. Certainly the original consent of the State to the proceedings may affect or even negate its claim of Eleventh Amendment immunity, and its consent equally may affect the claim of violation of the PLRA. The parties present greatly different views of just what the State has consented to. Yet the district court has never been called upon to rule on any of these questions, which may require evidentiary proceedings to resolve. The State, to our knowledge, has not moved for relief from the consent orders under the PLRA, 18 U.S.C. § 3626(b). *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000) ("If prospective relief has already been granted by a court, § 3626(b) controls."). Very recently, while this appeal was pending, the State advised us that it had filed in the district court a Motion to Replace Receiver with a Special Master and to Terminate the Receiver's Construction Plan. Proceedings in response to that motion, or to a motion for relief from the consent decree if the State should deem it advisable to file one, are proper vehicles for addressing in the first instance the objections the State seeks to raise on this appeal without a sufficient district court record. The district court in further proceedings, either on a motion to remove the Receiver and to terminate his construction plan, or perhaps on

a motion for contempt, can address these larger questions and create a record that will permit further review. We also note that a tentative order for the release of large numbers of the State's prisoners has been entered in a related case. *See Coleman v. Schwarzenegger*, Nos. CIV S-90-0520, C01-1351, 2009 WL 330960 (E.D.Cal. Feb. 9, 2009). That event, too, may lead to modifications in the district court of orders of which the State complains here. In that event, those further orders of the district court, when final, will be appealable. We are convinced, however, that the attempt to raise issues challenging the receivership or the consent decree in this appeal of the October 27 Order is premature, and that the Order as it stands is not appealable.

## 2. *Mandamus.*

**[8]** We also deny the State's petition for a writ of mandamus. The standards for issuance of that writ are set forth in this court's decision in *Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977). We must consider the following five factors to determine whether mandamus is appropriate:

(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

*Id.* at 654-55 (internal citations omitted). "The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators." *Id.* at 655.

**[9]** Analysis of the *Bauman* factors does not support the issuance of a writ in this case. As to the first *Bauman* factor, the State can appeal a final order of the district court finding it in contempt. *Stone*, 968 F.2d at 854-55 (9th Cir. 1992); *Hickey*, 322 F.3d at 1127. It is true, as the State contends, that a court *may* issue a writ of mandamus petition to strike down an order when contempt for violation of the order was contemplated but not yet adjudged by the district court. *See In re Philippine Nat'l Bank*, 397 F.3d 768, 771, 774 (9th Cir. 2005). The State's petition makes clear, however, that the State seeks review of larger questions going beyond the order for which the writ is sought. The petition states:

> While the district court's order involved the not-insignificant sum of $250 million, the relief sought by the Receiver—$8 billion over four years, including $3.2 billion in this fiscal year alone—illustrates the unprecedented scope of the district court's order and why the exercise of this Court's extraordinary authority to issue a writ of mandamus is justified, if not compelled.

As we have already pointed out, the Order did not address these larger questions, which the district court may deal with in further proceedings that lead to appealable orders regarding the receivership and construction program.

**[10]** The State contends that the second *Bauman* factor favors the State because it may be forced to pay $250 million for an "illegal" construction project. We are presented, how-

ever, with an insufficient record to determine whether the construction project is illegal. Further appropriate proceedings in the district court, not confined to the issue whether the State has paid the $250 million, will permit review of that issue. Mandamus at this point would be premature.

[11] The third *Bauman* factor also cuts against relief in this situation. For reasons already stated, we cannot rule definitively on the substance of California's claims, which are not properly before this court on direct appeal and are not resolvable on this record for purposes of mandamus. We are satisfied, however, that the district court's October 27 Order is not "clearly erroneous" as required by *Bauman*. It followed from consent orders and a receivership that had not been contested by the State at the time the Order issued. Whether the Order was erroneous, despite the ample history indicating the State's consent to the foundations from which the Order sprang, may or may not be open to debate when all factual issues have been resolved, but on the present record the Order is not clearly erroneous.

[12] The fourth *Bauman* factor does not aid the State. The district court in these proceedings has largely operated with the consent of the parties. There is nothing in the record to suggest that it has engaged in "oft-repeated error" or "manifest[ed] a persistent disregard of the federal rules." *Bauman*, 557 F.2d at 655.

[13] Finally, the fifth *Bauman* factor does not support issuance of a writ. Although the State presents important questions, which may be matters of first impression, concerning the Eleventh Amendment, the PLRA, and the prison construction program as a whole, none of those challenges has been properly raised in the district court. Many or all of them may be addressed in response to the State's motion, now pending in the district court, to remove the Receiver and terminate his construction program. It would be most inappropriate for this court to address those issues by the extraordinary writ of man-

damus before the district court has dealt with them. We accordingly deny the petition for writ of mandamus.

**No. 08-17412: APPEAL DISMISSED.**

**No. 08-74778: PETITION FOR WRIT OF MANDA-MUS DENIED.**