REINHARDT, Circuit Judge:
INTRODUCTION
In October 1982, Stephen Arrington, John DeLorean, and William Hetrick were indicted in Los Angeles on charges of violating federal narcotics statutes. The legal proceedings surrounding DeLorean’s indictment have created much public interest and received extensive coverage in the press. From the beginning of these proceedings until December 22, 1982, the district court records and files in the case were open to inspection by the press and public. On December 22, however, the district judge responded to the wide press coverage by ordering that
all future filings of documents in the instant matter ... shall be in camera. Said documents shall be filed under seal in order to permit this court to initially review them and to make a determination with regard to disclosure based on defendants’ rights under the Sixth Amendment and the First Amendment rights of the public as set forth in U.S. v. Brooklier, 685 F.2d 1162 (9th Cir.1982).
This order was issued sua sponte, without any notice to, or opportunity to be heard by, the parties, the press, or the public. The order was not accompanied by any findings.
*1145 Various members of the press soon asked the district court to reconsider or stay the December 22 order. The district judge held a hearing on January 25, 1983 at which the views of the press, the defendants, and the prosecution were heard. Two months later, on March 22, 1983, the district judge denied the press’s request to stay the December 22 order. He did so after writing a thorough opinion carefully analyzing the various issues. The court left in effect the requirement that all documents filed in the case be automatically sealed. However, the procedure for dealing with sealed documents was modified:
Upon this court’s receipt of a submitted document, the clerk of this court shall notify The City News Service of said filing and indicate by title the document filed. All parties shall have 48 hours to submit written comments to this court regarding the propriety of sealing the subject document. Counsel for the named parties in the instant action shall file all comments under seal. At the expiration of the 48 hour response period, this court will promptly rule upon the unsealing or sealing of the subject document. This order in no way precludes this court from ordering the unsealing of a document prior to the expiration of the 48-hour period should it determine that sealing is unnecessary.
Although the order provides that the “parties” shall have an opportunity to comment, the district court’s practice has been to allow the press to comment as well.
The Associated Press and the Los Angeles Herald Examiner, joined by several other news organizations, petitioned this court for a writ of mandamus directing the district court to vacate its December 22, 1982 and March 22, 1983 orders.
DISCUSSION
In United States v. Brooklier, 685 F.2d 1162, 1170 (9th Cir.1982), we held that the first amendment right of access to criminal trials also applies to pretrial proceedings such as suppression hearings. There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them. Indeed, the two principal justifications for the first amendment right of access to criminal proceedings apply, in general, to pretrial documents. Those two justifications are: “[fjirst, the criminal trial historically has been open to the press and general public,” and “[sjecond, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole.” Globe Newspaper Co. v. Superior Court, -U.S.-, 102 S.Ct. 2613, 2619-20, 73 L.Ed.2d 248 (1982). There can be little dispute that the press and public have historically had a common law right of access to most pretrial documents, see, e.g., Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-98, 98 S.Ct. 1306, 1311-12, 55 L.Ed.2d 570 (1978) — though not to some, such as transcripts of grand jury proceedings. Moreover, pretrial documents, such as those dealing with the question whether DeLorean should be incarcerated prior to trial and those containing allegations by DeLorean of government misconduct, are often important to a full understanding of the way in which “the judicial process and the government as a whole” are functioning. We thus find that the public and press have a first amendment right of access to pretrial documents in general.
The first amendment right of access may sometimes conflict with a defendant’s sixth amendment right to a fair trial. In these situations, we require that a party seeking closure of proceedings or sealing of documents establish that the procedure “ ‘is strictly and inescapably necessary in order to protect the fair-trial - guarantee.’ ” Brooklier, 685 F.2d at 1167 (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 440, 99 S.Ct. 2898, 2936, 61 L.Ed.2d 608 (1979) (Blackmun, J., concurring)). To meet this burden and justify abrogating the first amendment right of access, it is necessary to satisfy three separate substantive tests. *1146 We find that the district court’s orders fail to pass any of these tests.[1]
First, there must be “a substantial probability that irreparable damage to [a defendant’s] fair-trial right will result” if the documents are not sealed. Id. There has been no such showing in this case sufficient to justify the blanket orders sealing (though for a limited period) all documents filed. Although the prosecution of DeLorean has attracted a great deal of publicity, there are many other cases that generate significant public interest. Yet documents in these other cases are routinely opened to the public without jeopardizing the fair trial guarantee.[2] As the Supreme Court has emphasized, “pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically in every kind of criminal case to an unfair trial.” Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 565, 96 S.Ct. 2791, 2805, 49 L.Ed.2d 683 (1976). See also United States v. Myers, 635 F.2d 945, 953 (2d Cir.1980) (“despite the extensive publicity about Abscam ... about half of those summoned for jury selection had no knowledge of Abscam, and only a handful had more than cursory knowledge. Even the intensive publicity surrounding the events of Watergate ... did not prevent the selection of [impartial] jurors” (citations omitted)). Because there has been no showing that access to pretrial documents will create a substantial probability of irreparable damage to defendants’ fair trial rights, the district court’s orders do not satisfy this first test.
Second, there must be “a substantial probability that alternatives to closure will not protect adequately [the] right to a fair trial.” Brooklier, 685 F.2d at 1167. In other words, there must be no less drastic alternative available. We believe that courts can readily devise less drastic procedures that will ensure that parties who contemplate filing any documents that might actually prejudice the right to a fair trial will act responsibly. Various procedures are available to trial judges to persuade parties to refrain from filing such documents or, if exceptional circumstances exist, to file the few documents of that nature that must be filed under seal. Moreover, based on the record before us, we believe that careful jury selection is an alternative that can adequately protect the right to a fair trial. See, e.g., Nebraska Press Ass’n, 427 U.S. at 563-64, 96 S.Ct. at 2804-05. In a large metropolitan area such as Los Angeles, with its millions of potential jurors, it is unlikely that “searching questioning of prospective jurors ... to screen out those with fixed opinions as to guilt or innocence” and “the use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court,” id. at 564, 96 S.Ct. at 2805, will fail to produce an unbiased jury, regardless of the nature of the pre-trial documents filed.
Third, there must be “a substantial probability that closure will be effective in protecting against the perceived harm.” Brooklier, 685 F.2d at 1167. Despite the district court’s two orders, all parties concede that the DeLorean prosecution continues to be the subject of substantial coverage in the press. There is currently no shortage of information for the press to exploit. Given the extensive publicity that is occurring even while the orders are outstanding, we doubt that the limitation on publicity accomplished by the closure orders would have any significant effect on DeLorean’s right to a fair trial. See, e.g., Globe Newspaper, -U.S. at -, 102 S.Ct. at 2621-22.
*1147 In sum, the district court orders fail to meet any of the three substantive tests. Moreover, the court’s orders that seal each and every document filed impermissibly reverse the “presumption of openness” that characterizes criminal proceedings “under our system of justice,” Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980) (plurality opinion). See also Globe Newspaper, - U.S. at -, 102 S.Ct. at 2622. It is irrelevant that some of these pretrial documents might only be under seal for, at a minimum, 48 hours under the March 22, 1983 order. The effect of the order is a total restraint on the public’s first amendment right of access even though the restraint is limited in time.[3] See, e.g., Brooklier, 685 F.2d at 1169-71. We perceive nothing in the record of this case to warrant the use of such blanket orders. Consequently, we direct that the district court’s December 22, 1982 and March 22, 1983 orders be vacated on the ground that they violate the public’s first amendment right of access to criminal proceedings.
FURTHER PROCEEDINGS
Ordinarily, documents sealed under an unconstitutional order would be released immediately. In this case, however, the orders sealed all documents to be filed on or after December 22. Thus, the parties may have filed documents in reliance on those orders rather than following the normal procedure of requesting the sealing of specific documents on an item-by-item basis. With regard to all documents currently under seal, therefore, the parties will have until 12:00 Noon on May 13, 1983 to make motions to seal any specific documents that they believe should remain sealed under the three-part Brooklier test. The district court must comply with the procedural as well as the substantive requirements established by Brooklier, 685 F.2d at 1168-69, and should rule on these motions promptly. If the district judge decides that any documents should remain sealed, he must make “sufficiently specific” findings on a document-by-document basis
to show that the three substantive prerequisites to closure have been satisfied — • that there is a substantial probability (1) that public proceedings would result in irreparable damage to defendant’s right to a fair trial, (2) that no alternative to closure would adequately protect this right, and (3) that closure would effectively protect it.
Id. If a document now under seal is not the subject of a timely closure motion, it will be unsealed immediately unless the court sua sponte decides to conduct a Brooklier hearing with respect to that document.[4]
REMEDY
This is an appropriate case for the issuance of a writ of mandamus. In re Cement Antitrust Litigation, 688 F.2d 1297 (9th Cir.1982); Bauman v. United States District Court, 557 F.2d 650 (9th Cir.1977); see Brooklier, 685 F.2d at 1173. The writ will issue forthwith.

. Because of the result we reach, we will only discuss the three substantive tests and need not consider whether the January 25, 1983 hearing and the March 22, 1983 order met the procedural tests set forth in Brooklier. See 685 F.2d at 1168-69. We note, however, that the December 22 order clearly did not.

. The parties agree that the district court’s order was precipitated by a newspaper report concerning a prosecution allegation that DeLorean had ties to the Irish Republican Army. The district judge made no specific findings on the impact of this news report. We think it clear, however, that the report was insufficient cause, under the Brooklier test, for the imposition of a blanket order sealing all documents.

. While the record is far from complete, it appears that the provision for prompt rulings (following a 48-hour comment period) on whether documents should be unsealed may be somewhat unrealistic and illusory. Although this is more than understandable, in view of the pressures of daily litigation under which the district judge and busy trial lawyers must operate, it only serves to emphasize one of the difficulties with blanket orders.

. Similarly, if any party wishes to make a motion that a document remain sealed for reasons unrelated to the fair trial right, such a motion shall also be made by 12:00 Noon on May 13, 1983.